## GRAHAM *v.* LIFE ASSOCIATION.

### (*Nashville.*      March 17, 1896.)

1. EVIDENCE.   *Notice to produce originals.*

   Notice to a party to produce "letters, reports, and accounts" relating to the subject-matter of the litigation, is not sufficient to require the production of the original books of accounts of such party, or the cards from which they were made up. (*Post, p. 54.*)

2. SAME.   *Memorandum for refreshing witness' memory.*

   A memorandum taken by the witness himself, or under his immediate direction, from original books or papers made up by himself, or under his supervision, though not itself admissible in evidence, may be used by him in aid of his independent recollection of the transactions therein recorded, when the production of the originals has not been demanded. (*Post, pp. 54, 55.*)

3. SAME.   *Excluding written contract not erroneous, when.*

   The exclusion of a written instrument, offered by the plaintiff in an action for malicious prosecution to show lack of indebtedness to defendant, and hence want of probable cause, does not constitute reversible error, where it appears indisputably that nothing had accrued or could ever accrue to plaintiff under such instrument.   (*Post, pp. 55–60.*)

4. SAME.   *Exclusion of parol evidence contravening a written contract not erroneous.*

   The exclusion of parol evidence that contravenes the express stipulations of a written contract between the parties is not erroneous.   (*Post, p. 59.*)

5. MALICIOUS PROSECUTION.   *Charge as to probable cause.*

   A charge that the action of malicious prosecution lies only in "cases where a criminal accusation is made against an innocent man with malice, and in the absence of even a fair, reasonable probability that it is true," is not erroneous in its

Graham *v.* Life Association.

definition of probable cause, and is the equivalent of a request defining probable cause as "such facts and circumstances brought to the mind of a reasonably prudent man as would cause him to believe in the guilt of the accused." (*Post, p. 60.*)

6. SAME. *Charge as to malice.*

A charge in an action for malicious prosecution, that "if the prosecution was instituted for the purpose of forcing the payment of a debt, and not for the purpose of bringing an offender to justice, you would be justified in finding that it was malicious," is not cause for reversal, though it is not strictly accurate. (*Post, pp. 60, 61.*)

Case cited and approved: Morgan *v.* Duffy, 94 Tenn., 686.

7. SAME. *Refusal of request not error.*

Refusal of the Court to charge plaintiff's special request, that if a prosecution was originally instituted without malice and upon probable cause, but was continued after knowledge of facts rebutting probable cause, that it would be then a prosecution without probable cause and with malice, is not erroneous, when there were no facts in the case calling for such proposition. (*Post, pp. 61, 62.*)

8. SAME. *Refusal of request as to advice of counsel not erroneous, when.*

Refusal of the Court to charge plaintiff's special request that defendant in an action for malicious prosecution would not be protected, though he acted upon the advice of counsel, if he sought and obtained the advice for the purpose of ascertaining whether or not it was possible to scare or bluff the plaintiff out of an amount of money, is not cause for reversal, when the entire subject of the request was fully covered by the original charge. (*Post, pp. 62–64.*)

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. J. W. BONNER, J.

14 P—4

E. L. McNEILLY, NOLEN & SLEMONS, and BAR-
THELL & KEEBLE for Graham.

CHAMPION, HEAD & BROWN, PITTS & MEEKS, and
STOKES & STOKES for Life Association.

McALISTER, J.  The plaintiff commenced this suit
in the Circuit Court of Davidson County against the
Fidelity Mutual Life Association and James M. Head,
to recover damages for an alleged malicious prose-
cution.  There was a verdict and judgment in favor
of the defendants.  Plaintiff appealed and has as-
signed errors.  The record discloses that from May
8, 1893, to September 12, 1893, the firm of Selden
& Graham, composed of A. A. Selden and the
plaintiff, James Graham, was the general agent in
the State of Tennessee for the defendant insurance
company, with authority to solicit life insurance, de-
liver policies, collect premiums, and remit the same
to the association at Philadelphia.  About October
10, 1893, the defendant company caused the arrest,
indictment, and prosecution of said agents on a charge
of embezzlement.  The defendants were both acquitted
of said charge, and thereupon plaintiff, Graham, in-
stituted this suit against the company and James M.
Head, its attorney, to recover damages for the
criminal prosecution.

The fundamental inquiry underlying the present
action is, whether at the time the prosecution
was set on foot there were such facts and cir-
cumstances of an incriminating character presented

to the company as would have generated in the mind of a reasonable man the belief that the crime of embezzlement had been committed. In all such cases the real inquiry is, not whether, in point of fact, the crime has been committed, but whether there existed reasonable grounds to believe the charge was true, and was the belief honestly entertained. It is a case, then, of apparent guilt as contradistinguished from real guilt, and an honest belief of it at the time upon the part of the party prosecuting, and upon sufficient grounds to warrant that belief. In all such cases it is well settled that the want of probable cause must be expressly and substantially proved and cannot be implied. There must also be a concurrence of malice with want of probable cause. From the want of probable cause malice may be inferred by the jury, but from the most express malice there can be no inference or deduction drawn of want of probable cause. The malice necessary to support this form of action is not spite or malevolence towards the plaintiff, but it means the evil mind that is regardless of social duty and the rights of others. These principles are axiomatic, and need no citation of authorities.

It appears from the record that the Fidelity Mutual Life Association, of Philadelphia, had been represented in Tennessee by the said A. A. Selden prior to the formation of his partnership with the plaintiff, Graham. At the date of the appointment of the firm of Selden & Graham as general agents of said

company for the State of Tennessee, the said Selden was delinquent in his accounts with the company for a considerable amount, and had represented to the company that his new partner, the plaintiff, Graham, was to pay for the latter's interest in the firm the sum of $500 in cash, and execute three notes for the sum of $500 each, and Selden promised out of this money to settle his indebtedness to the company. It turned out that Graham, under his private contract with Selden, was to pay $500 in cash, and $1,500 out of the prospective profits of the business. Selden having failed to settle with the company, finally went to the home office, at Philadelphia, in July, 1893, and, after a thorough examination of his accounts, admitted an indebtedness to the association amounting to $1,738, and proposed to pay it by sight draft on Selden & Graham, of Nashville, for $388.28; and a remittance of $1,350 the following week. The draft by him for $388.28 was protested for nonpayment, and the only remittance made was the sum of $75, which was not sent until September. We cannot doubt, from the facts disclosed in the record, that Graham had knowledge of Selden's indebtedness to the company.

It further appears that, on September 8, 1893, the general agent of the company, one Bolling, came to Nashville for the purpose of obtaining a settlement of Selden's individual indebtedness to the company. While here, he discovered a deficiency also in the accounts of the new agency of Selden &

Graham. Bolling thereupon demanded a settlement of the firm's business. Graham admitted that he had in his possession money belonging to the association, but refused to turn it over, claiming in an indefinite way, and without specifying them, that he had counter claims against the association. Bolling having failed to get a settlement, either of Selden's individual shortage or of the firm's indebtedness, revoked the authority given Selden & Graham as general agents of the company, and took possession of the office. Bolling thereupon laid the matter before Messrs. Champion, Head & Brown, general counsel for the company, and asked their advice. Counsel advised that, under the facts stated, the funds collected were trust funds, and that Selden & Graham were amenable to an indictment for embezzlement, and that a civil action would also lie for the recovery of the money. Counsel were instructed to do whatever might be necessary, and, thereupon, Bolling left the State.

Thereafter, on October 6, a bill was filed in the Chancery Court for the collection of said deficiency, and, on October 10, an indictment was returned by the grand jury of Davidson County against Selden & Graham, charging them with embezzlement. As already stated, the plaintiff was acquitted of the criminal charge, and brings this suit to recover damages for the wrongful prosecution. In this brief statement we have not undertaken to narrate all the facts or to point out all the controverted issues. The

verdict of the jury has settled all the disputed questions of fact, and by every intendment they have been resolved in favor of the defendant. This mere outline of the controversy is made for a better understanding of the assignments of error, which will now be noticed.

The first assignment of error is that the Court erred in permitting the witness, George C. Mitchell, over objection of plaintiff's counsel, to read to the jury a statement purporting to be the account between the plaintiff and the defendant company, when said statement was taken from the original books and cards by others than the witness himself. Counsel for plaintiff states, in this assignment of error, that notice had been served on defendant to produce the original books and cards. We find, upon an examination of this notice, that while it does embrace letters, reports, and accounts, there is no demand for the production of the original books and cards. But, conceding for the purposes of this assignment, that no notice was necessary, we are yet of opinion that this assignment is based upon an erroneous predicate in respect of what transpired in the trial Court. It assumes that the Circuit Judge permitted to be read to the jury, as original evidence, disconnected with the personal knowledge of the witness, a statement of what is shown by certain books and cards without the production of the originals. This is alleged to be erroneous for three reasons—first, because the original cards referred to

by the witness are the best evidence, and were de-
manded of the defendant; second, because the said
witness failed to identify the said paper he read to
the jury as a copy of the cards and books from
which it purports to have been taken; third, be-
cause a portion of the items in said statement were
taken from the cards and books by others than the
witness himself.

An examination of the record will show that the
Court did not allow this statement to be read to the
jury as original evidence, but simply permitted the
witness to refer to it as a memorandum, to refresh
his recollection.   Moreover, the record shows that the
witness, Mitchell, was the chief clerk of the de-
fendant company, and the original entries were made
either by the witness himself or by his assistant
bookkeepers under his personal supervision, and were
based upon reports and accounts furnished by the
firm of Graham & Selden, and the preceding firm,
of which Mr. Selden was a member.   In addition
to this, the witness testified in respect of his knowl-
edge of the correctness of these accounts.   So that
in no sense is this a case in which copies of books
and accounts have been admitted as original evidence,
as assumed in the assignment of error.   Greenleaf
on Evidence, Vol. I., Sec. 436, p. 597.

The second assignment of error is based upon the
refusal of the Court to permit the plaintiff to in-
troduce in evidence the individual contract between
A. A. Selden and the defendant association, made

some time prior to the formation of the firm of Selden & Graham, and claimed to be in force up to the time of the execution of the Selden & Graham contract with the association. Plaintiff had shown, continues the assignment, that he had purchased a one-half interest in all contracts which Selden had with the association, and that the same was made with the knowledge and approval of the association. Defendant objected to this evidence because it was an offer to prove a contract between Selden and the insurance company prior to the existence of the contract between Selden & Graham and the company. It is insisted this ruling was erroneous, for the reason that plaintiff, Graham, had not only shown that he had purchased a one-half interest in all of Selden's interests, but, that prior to the time Bolling, the superintendent, came to Nashville and the dissolution of the Selden & Graham agency, he had fully communicated to the association the nature of the purchase he had made from Selden, and had demanded from the association an accounting for that which he had purchased.

The individual contract between Selden and the defendant company, was entered into prior to the formation of the firm of Selden & Graham, and was supplanted by the new contract entered into between Selden & Graham and the defendant association. It was shown in proof that Selden, during the pendency of his individual contract with the company as general agent, and also while subagent, had become in-

debted to the company in the sum of $1,738, for money misappropriated by him. This indebtedness was due and unsettled at the date of the formation of the firm of Selden & Graham, who became general agents for the company in the State of Tennessee. About the time this firm entered into its contract with the company, the members made a private contract with each other, by the terms of which, Graham, for a one-half interest in said firm, paid to said Selden the sum of $500 in cash, and stipulated to pay the further sum of $1,500 out of the profits of the business.

The contention of Graham is, that, under his private contract with Selden, he acquired a one-half interest in the renewal commissions of Selden's individual contract with the company, and that it was error for the Circuit Judge to exclude from the consideration of the jury the individual contract of Selden with the company, which would show the extent of Graham's interest in said contract. It should be remarked in this connection, that when Bolling came to Nashville for a settlement of Selden's shortage, and accidentally discovered a deficiency in the accounts of Selden & Graham, the latter admitted that he had in his hands funds belonging to the company, but undertook to set up a counterclaim against the company.

On the trial, Graham undertook to establish his counterclaims in two ways: (1) By proof of traveling expenses and other items incident to running

the business, which the contract of Selden & Graham
with the association expressly provided should be
borne by the agency; (2) plaintiff offered to prove
by Selden the estimated value of his renewal interests
in policies underwritten by them as general agents.
The Circuit Judge sustained the exception of defend-
ants' counsel, and excluded this evidence.

In this we think there was no error.  These re-
newal interests were wholly speculative, and contin-
gent upon the duration of the policies for eight
years and the continuation of plaintiff's agency.  The
Circuit Judge, however, held that ''plaintiff would
be entitled to show, at the time a demand for set-
tlement was made upon him and refused, that Mr.
Selden had in the hands of the company money
actually to his credit on account of renewal commis-
sions, and that there was nothing due from Mr.
Selden to the company, or, at least, there was a
balance due him after paying off his shortage to the
company, but that the simple, estimated value of
renewal interests, calculated upon the principle of
insurance average — namely, the value to the agent
of possible, contingent, or uncertain renewals—cannot
be brought up as an offset in this cause.''  This
ruling was not only proper, but the proof shows
that there was nothing due Selden on the tenth of
September, 1893, when the company demanded a
settlement.  On the contrary, the testimony conclu-
sively shows that Selden was indebted to the com-
pany in the sum of $1,738, and the firm of Selden

& Graham had not accounted for funds amounting to $683. The contract between Selden & Graham and the association expressly provides that the value of renewal commissions is fixed according to the length of time the policies have been in force, and no value is fixed upon a renewal interest in any policy until it has been in force at least one year, and the renewal premium actually paid, and the proof in this cause seems to indicate that no renewal commissions could have been due Selden until November 8, 1893, which was several months after the agency of Selden & Graham had terminated. There is proof in the record tending to show that the renewal commissions upon the policies alive September 18, 1893, date of dissolution of the agency, would scarcely liquidate the interest upon the aggregate amount of indebtedness due from these several agencies. It having been shown that Selden had no interest in said several agencies, there was no error in disallowing the introduction of the Selden contract, nor was there error in the action of the trial Judge excluding the testimony of Selden to the effect that after the delivery of a policy the agent had actually earned his renewal commissions, for the reason that such a statement contravened the express stipulations of the contract with Selden & Graham, already quoted, which provide that the renewal commission is not earned until the policy shall have been in force one year, and the second year's premium shall have been paid. This disposes, substan-

tially, of all material assignments of error in respect of the rulings of the Court upon questions of evidence.

The first assignment upon the charge is that the Judge erred in the following instruction: "This action is only intended to apply to cases where a criminal accusation is made against an innocent man with malice, and in the absence of even a fair, reasonable probability that it is true." The contention of plaintiff is that the Court should have charged that it was only "such facts and circumstances brought to the mind of · a 'reasonably prudent and cautious man as would cause him to believe in the guilt of the accused," that would operate as a justification for a wrongful prosecution, and not a "fair, reasonable probability of its truth." It is not perceived wherein the charge given was less favorable to plaintiff than the instruction counsel claim ought to have been given. The charge, as given, was correct, and if counsel desired any explanation or a charge upon a different aspect of the facts, it should have been formulated and presented to the Court.

The next assignment necessary to be noticed is that the Court charged that "malice may be inferred from the want of probable cause, but this is not a presumption of law nor a necessary presumption. It is a mere inference of fact, which you may or may not make, as the circumstances require."

The criticism of appellant is more especially directed to the following paragraph from the charge,

which was given by the Circuit Judge in connection with his explanation of the term malice, to wit: "If this prosecution was instituted for the purpose of forcing the payment of a debt, and not for the purpose of bringing an offender to justice, you would be justified in finding that it was malicious." Plaintiff claims that this instruction was erroneous, for the reason that it left the inference of malice to the jury, whereas, if it appears that the prosecution was for the purpose of coercing the payment of a debt, malice will be inferred as a presumption of law. Counsel cite, in support of this contention, the case of *Morgan* v. *Duffy*, 10 Pickle, in which it was said, viz.: "Actual malice, in the sense of ill will or personal hatred, need not be shown. Any improper motive is sufficient to constitute legal malice, and malice will be inferred when the object of the prosecution is to enforce the payment of a debt." While this instruction was not strictly accurate, we think the jury must have understood from the charge of the Court, that a suit instituted for no other purpose than the collection of a debt was a malicious suit, and the objection to the charge is therefore hypercritical, and the error not reversible.

The next assignment of error is based upon the refusal of the trial Judge to give the following instruction to the jury, submitted by plaintiff's counsel, to wit: "That if defendants believed that the plaintiff was guilty at the time the prosecution was instituted, but that afterwards, and before the trial,

they believed, or subsequent to the finding of the indictment facts were brought to their knowledge which would cause a reasonable and prudent man to believe, that the plaintiff was not guilty, and that they then continued to prosecute him, the prosecution so continued is without probable cause, and from such want of probable cause the jury would be warranted in inferring malice." We find no evidence in the record that warranted such a charge, and, hence, the request was a mere abstraction, which was properly refused.

The fourteenth request submitted by counsel for plaintiff was, viz.: "That if the jury find that the defendant association sought the advice of Mr. Head for the purpose of ascertaining whether or not it was possible to scare or bluff the plaintiff out of any amount of money, that advice of counsel, so sought, is not sought in good faith, and is not available as a defense." We think the instructions of the Court, in his general charge on the subject of advice of counsel, fully and accurately covered the law on the subject. He said, viz.: "If you should find that before beginning any criminal prosecution, defendant's agent, S. C. Bolling, consulted, in good faith, James M. Head, in his capacity as an attorney and counselor, giving to said Head a full, true, and complete statement of all material facts within his knowledge, and you also find there were no other material facts relative to the matter which the defendant might have ascertained by the

exercise of reasonable diligence, and if you further find that after considering all the facts, so submitted, Mr. Head advised defendant's agent that the offense of embezzlement had been committed by plaintiff, James Graham, and if you further find that this advice of counsel was warranted by the law governing and defining embezzlement (as hereafter to be given in charge), and if you further find that this advice was accepted and acted on in good faith, and under an honest belief of the plaintiff's guilt, such advice, thus sought and acted upon, would be sufficient evidence of probable cause, so far as the insurance company is concerned, and in the case just supposed you should find in its favor.

"Again, if Mr. Head, after his employment as attorney, did, as the authorized representative of the company in that matter, submit to the Attorney-general for the county of Davidson, in good faith, a full, true, and complete statement of all material facts within the knowledge of the company's agent and himself, and if you find there were no other material facts relating to the matter which he or the defendant company might have ascertained by the exercise of reasonable diligence, and if you further find that, after considering all the facts so submitted, the Attorney-general advised the indictment of plaintiff upon the charge of embezzlement, and that this advice was warranted by the law governing and defining embezzlement (hereafter to be given in charge), if you find that the advice was

accepted and acted upon by both defendants, in good faith and under an honest belief of plaintiff's guilt, this would be sufficient evidence of probable cause, and, in the case just supposed, you should find for both defendants.''

We find no reversible error in the record, and the judgment is therefore affirmed.