WESTON G. LAWSON, Plaintiff-in-Error, v.
EDWARD T. WILKINSON, Defendant-in-Error.
—447 S.W.2d 369.

Western Section.   May 28, 1969.

Certiorari Denied by Supreme Court November 17, 1969.

Eulyse M. Smith, Memphis, for plaintiff in error.

C. Cleveland Drennon, Jr., Memphis, for defendant in error.

MATHERNE, J. This is an appeal in error from a jury verdict and judgment rendered against plaintiff in error in a malicious prosecution suit. The parties will be referred to as they appeared below, plaintiff in error as defendant, and defendant in error as plaintiff.

The present suit grew out of a criminal prosecution wherein the defendant obtained a warrant for plaintiff's arrest under the provisions of T.C.A. 39-1904, commonly

referred to as the "bad check law". This criminal prosecution resulted in plaintiff being arrested, placed in jail, held overnight, fingerprinted, arraigned and bound over to await the action of the grand jury. Before the case was presented to the grand jury the charge against the plaintiff was dismissed by the office of the District Attorney.

After the criminal prosecution was dismissed the defendant sued the plaintiff in a civil action for the sum of $490.95, the exact amount of the check in question, which represented the alleged purchase price of a horse, bridle, blanket and sweat scraper. Defendant obtained a judgment therefor, which judgment was paid by the plaintiff.

The plaintiff then instituted this action against the defendant suing for damages claiming malicious prosecution by the defendant in the criminal proceedings under the bad check law above referred to. The jury awarded plaintiff a verdict of $4,500.00 compensatory damages and $500.00 punitive damages. The defendant moved for a new trial which was overruled and has perfected his appeal in error to this Court wherein by five Assignments of Error the following issues are presented: (1) There is no evidence to sustain the verdict, (2) The defense of "probable cause" for the prosecution in the criminal case justified a directed verdict for defendant in this cause, (3) The defense of "action on advice of counsel" justified a directed verdict for defendant, (4) The plaintiff failed to prove malice on the part of defendant, and (5) The Trial Court erred in refusing to charge a special request made by the defendant.

The record reveals that defendant is engaged in the business of buying and selling horses. Plaintiff accom-

panied by one Robert Franklin Watson, IV, went to defendant's stable on Sunday afternoon, May 1, 1966, and discussed the purchase of a horse. Plaintiff testified that defendant suggested the purchase of a walking horse, the same being a large strawberry roan gelding. Defendant stated he would take $450.00 for the horse.

There is a sharp conflict in the evidence as to whether the plaintiff was to be satisfied with the horse. Plaintiff testified that he told defendant he wanted to discuss the matter with his wife before purchasing the horse and that defendant replied that if plaintiff or his wife were dissatisfied with the horse, they could return it and get the money back. Plaintiff testified that defendant stated he liked to match the man to the horse; a big man needed a big horse, and he felt this particular strawberry roan was the horse for plaintiff. Plaintiff rode the horse on this occasion but did not close the deal. Plaintiff is corroborated in these details by affidavit of Robert Franklin Watson, IV, which said affidavit is made a part of the record as exhibit to the testimony of Assistant District Attorney William Haynes. Defendant denied that he promised the plaintiff satisfaction with the horse, or he would take it back.

The next contact between the parties was the evening of May 1 or May 2 when plaintiff called defendant and said he would take the horse if defendant could deliver it with certain gear. On May 2, 1966, or May 3, 1966, the evidence conflicts as to the date, the defendant delivered the horse and plaintiff gave him a check dated May 2, 1966, in the amount of $490.95 representing $450.00 purchase price of the horse and $40.95 for a birdle, blanket and sweat scraper.

Plaintiff testified he was satisfied with the purchase at that time. However, he attempted to ride the horse and was unable to handle it. On the evening of the day of delivery plaintiff contacted defendant by telephone and told him that this horse was not for plaintiff, that they were mismatched. Defendant made a promise to come by and show plaintiff how to ride the horse. Plaintiff stated that judging from that conversation he figured he had been "took". The next morning plaintiff went to his bank and effected a stop-payment order on the check.

The defendant deposited the check, and it was returned to him marked "payment stopped". The defendant and plaintiff had other telephone conversations about the horse which finally ended with defendant telling the plaintiff that he was turning the check over to his attorney

The defendant consulted with Mr. H. Rex Moody, attorney, and was told that on a "stop-payment" check he (defendant) had a civil action against the plaintiff. This attorney told defendant he might have a criminal action and suggested that defendant consult the District Attorney General about that. The attorney did write a letter to the plaintiff giving notice as provided under T.C.A. 39-1904; however, he explained that this was done to start the procedure should a criminal proceeding be commenced. He stated positively that he did not advise a criminal prosecution.

Defendant thereupon went to the office of the District Attorney General and talked with Assistant District Attorney William Haynes who testified as follows:

\* \* \* ''And I tried to go into the matter as thoroughly as I could with Mr. Lawson and read to him the bad check law, as it then existed, providing for the five days notice; and the part about the fraudulent intent. I tried to question him as to why the payment was stopped on the check; that was one of the things that was concerning me the most about the matter.

Usually on this type transaction, it is the circumstance where the check has been returned for no funds or insufficient funds. And I tried to determine from him if there was any reason for the stopping the payment on the check or whether or not the payment was stopped as a means to accomplish fraudulent intent. And I usually caution people about the advisability of swearing of a warrant, of the danger of later not being able to successfully prosecute the case and later themselves being a defendant in what is actually here today, that is, a suit for false arrest implying malicious prosecution. And I attempted to determine from Mr. Lawsom some of the circumstances regarding why the payment was stopped on the check.

Mr. Lawson's attorney was not with him; he was represented at that time by Mr. Rex Moody; and usually the attorney who represents a person who is seeking advice usually comes down to the office with him, but for some reason Mr. Moody was not with him; I don't know whether he was engaged elsewhere or why, but he was not with him at that time.

And, after going into the matter as fully as I could for, I imagine, from 30 minutes to an hour, I told Mr. Lawson if I were him, I would advise him to go down in General Sessions Court and swear out what is called

a civil warrant for a money recovery of the amount of his check against Mr. Wilkinson, and that that was what I would suggest to him that he do. And, of course, we offer advice to persons who come by; by the same token, we cannot prevent them from going across the street and swearing out a warrant if they desire to do it; but we suggest to them their best defense against later litigation is advice of their own attorney and the advice of our office.''

After plaintiff was bound over to the grand jury his counsel presented to the Assistant District Attorney statements showing plaintiff had on deposit with the bank upon which the check was drawn a sum in excess of $4,000.00 at the time the payment was stopped. Also certain affidavits were produced which revealed to that official for the first time plaintiff's contention that he was to be satisfied with the horse, or he could return it. After studying these facts which had not been disclosed to him by the defendant, the Assistant District Attorney concluded that the State could not establish the necessary fraudulent intent on the part of plaintiff at the time the check was passed. The Assistant District Attorney thereupon prepared and obtained Court approval of an order dismissing the prosecution of plaintiff as instituted by the defendant.

▮▮ In order to maintain an action based on malicious prosecution the plaintiff must show the absence of probable cause for commencing the prosecution; that is, the absence of such a state of facts as would excite in a reasonable mind the belief that plaintiff was guilty of the offense charged against him. He must also show that defendant was actuated by malice; that is not by

hatred, but by indirect and improper motives. Malice may be inferred from the absence of probable cause. Peoples Protective Life Ins. Co. v. Neuhoff (1966) 56 Tenn. App. 346, 407 S.W.2d 190.

The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it are true and existed is a question of fact for the jury. Whether the facts found to be true constitute probable cause is a question for the Court. Klein v. Elliott (1968) 59 Tenn.App. 1, 436 S.W.2d 867 at 872.

The jury in this cause rendered a general verdict as follows: "We the jury find for the plaintiff, damages—Compensatory $4,500.00; Punitive $500.00."

Where the jury has rendered a general verdict the appellate court must view the evidence in the light most favorable to the finding of the jury. Klein v. Elliott, supra.

In applying these rules we therefore must conclude the jury found that defendant did agree to take the horse back if the plaintiff was dissatisfied. There was material evidence upon which to base this finding. Therefore, with that fact established, we must and do conclude as a matter of law that there was no probable cause for the criminal prosecution of the plaintiff by the defendant under the circumstances of the case.

Defendant insists that he is not liable because he brought the criminal prosecution on advice of counsel and the District Attorney.

When advice of counsel has been honestly sought and all the material facts relating to the case, ascertained or ascertainable by the exercise of due diligence, have

been presented to counsel, and a prosecution is commenced in pursuance of such advice, then it is the province of the Court to charge the jury, as a matter of law, that such advice of counsel entitles the party sued to complete immunity from damages. Cooper v. Flemming (1904) 114 Tenn. 40, 84 S.W. 801, 68 L.R.A. 849.

■ The evidence as herein outlined results in the conclusion that the defendant cannot rely on this defense. The defendant did not make a full disclosure to the Assistant District Attorney, and when that official did determine the existence of facts which showed lack of probable cause for the prosecution, the criminal suit was dismissed. Then, too, a fair interpretation of the testimony results in the conclusion that instead of acting on advice of counsel this defendant acted against advice of counsel and of the Assistant District Attorney when he swore out the criminal warrant against plaintiff.

■■ Actual malice in the sense of ill will or personal hatred need not be shown. Any improper motive is sufficient to constitute malice, and the same will be inferred when the object of the prosecution is to enforce the payment of a debt. Morgan v. Duffy (1895) 94 Tenn. 686, 30 S.W. 735; Graham v. Fidelity Mut. Life Association (1896) 98 Tenn. 48, 37 S.W. 995.

There is ample proof and material evidence from which the jury could find or infer malice in that the defendant in swearing out the criminal warrant acted against advice of counsel; he acted against the advice of the Assistant District Attorney, and as heretofore found, there was no probable cause upon which to base the belief that plaintiff had committed the crime. The jury had ample evidence upon which to base a finding that this defendant

did actively prosecute a criminal action to enforce the payment of a debt.

The defendant contends the Trial Court erred in not charging the following Special Request as made by the defendant:

"Gentlemen of the jury, I charge you that the fact that a transaction is a civil matter does not prevent it from also being a criminal matter."

We hold the above is not a correct statement of the law as applicable to this case. The purchase of a horse is a civil matter only, and by no stretch of the imagination could it be deemed a criminal matter. This instruction, if given, could have only confused the jury, and it was properly refused.

It results that all Assignments of Error must be and are overruled, and the judgment of the Trial Court is affirmed. Cost of this appeal in error is adjudged against the plaintiff in error. Cost in the Trial Court is to remain as there adjudged.

Carney, P.J., (W.S.), and Taylor, J., concur.