**Charles D. FOX, III, Plaintiff,**

**v.**

**C.I.T. FINANCIAL SERVICES CORPORATION, Defendant.**

**Civ. A. No. 87–0387–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Jan. 20, 1989.

Jonathan M. Rogers, Strickland & Rogers, Roanoke, Va., for plaintiff.

David G. Weaver, William J. Creech, Jr., Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

Defendant has moved the court for summary judgment in this diversity action for malicious prosecution. The court finds that summary judgment should not lie and denies defendant's motion.

Plaintiff initially filed this action for malicious prosecution and refusal to disclose an investigative consumer report in September, 1987. The court dismissed the action in March, 1988, but gave plaintiff leave to file an amended complaint, which plain-

tiff did on March 7. In the amended complaint, plaintiff reasserts only his claim for malicious prosecution. Defendant filed an answer on March 11 and moved for summary judgment on May 11. The parties have submitted affidavits in support of their positions, as well as the trial transcript of a contract action tried in the General Sessions Court for Knox County, Tennessee, *C.I.T. Financial Services Corp. v. Knoxville Jet–A–Way*, No. 25993 (March 9, 1987). Plaintiff's action in this court focuses on the state contract suit, in which C.I.T. named plaintiff as a second defendant.

Plaintiff Charles D. Fox, III, states on affidavit that he is a Virginia resident and a member of the Virginia bar and that from 1984 through 1987 he was secretary of Knoxville Jet–A–Way Corporation, a Virginia corporation. Mr. Fox's testimony at trial of the contract action indicates that a new telephone system was installed in an office or facility of Knoxville Jet–A–Way in Knoxville, Tennessee, pursuant to a lease document dated March or April, 1985, and that the equipment remained in use in the facility at the time the contract action was tried in 1987. Plaintiff has attached a copy of the document to his complaint. The lease document provided that a five-telephone Strata VI phone system would be installed at Knoxville Jet–A–Way's Knoxville facility in March, 1985. Defendant C.I.T., a New York corporation that does business in Virginia, would lease the system to Knoxville Jet–A–Way for five years. Citadel Security Co. of Knoxville was listed as the seller of the equipment. The names of a representative of C.I.T. and of Mr. Fox were signed at the bottom of the obverse of the document. Mr. Fox was identified as president of Knoxville Jet–A–Way. On the reverse, Mr. Fox's name again is signed, this time as a personal guarantor. Mr. Fox states on affidavit that he did not sign the lease document, and he testified at the trial that he never has been president of Knoxville Jet–A–Way. He also testified that Knoxville Jet–A–Way made a down payment to C.I.T. for the system and went on to make 16 monthly installment payments. C.I.T. employees testified that C.I.T. brought the contract action because Knoxville Jet–A–Way made no further installment payments on the lease after August, 1986.

Mr. Fox states on affidavit that he notified C.I.T. that his signature had been forged immediately after he learned of the lease in August, 1986.[1] He asserts that C.I.T. failed to investigate what he had told the company in his letter until September, 1987, when a C.I.T. employee telephoned him. Mr. Fox states that he told the employee that the signatures had been forged. The employee said C.I.T. would hold Mr. Fox personally responsible for the lease because Knoxville Jet–A–Way had lost its corporate charter. Mr. Fox replied that Knoxville Jet–A–Way remained a Virginia corporation in good standing. The C.I.T. employee said he would investigate the matter. Mr. Fox wrote to C.I.T. and reiterated substantially the same points he had expressed in the telephone conversation, he states. At trial, a C.I.T. employee testified that some time after Mr. Fox had written to the company the employee had "probably" noticed "some differences" between the signatures of Mr. Fox's name on the front and back of the lease document.

Mr. Fox does not attack C.I.T.'s lawsuit against Knoxville Jet–A–Way but complains of the company's decision to add him personally as a defendant to the action. Mr. Fox argues that since he had advised C.I.T. that the signatures on the lease document were forged, and since the signatures appeared suspicious on their face, a fact at least one C.I.T. employee believes he noticed at some point before trial of the contract action, C.I.T.'s decision to add him as a defendant in its contract action was malicious and without probable cause. He concludes that the suit against him therefore constituted malicious prosecution under Tennessee law. For this tort, Mr. Fox prays for $25,000 in compensatory dam-

---

1. In his complaint, plaintiff states that he first wrote to defendant about the forgeries in September, 1986.

ages and $25,000 in punitive damages, as well as his costs and attorney's fees.

In reply, C.I.T. adduces affidavits of the attorney who represented the company in its contract suit and of its division manager in Knoxville at the time. The attorney, Carleton E. Bryant, asserts that when he initially filed suit on C.I.T.'s behalf in October, 1986, to recover payments assertedly due on the lease, he named only Knoxville Jet–A–Way as a defendant. About six weeks later, however, Mr. Bryant states, an attorney associated in Mr. Fox's Roanoke, Virginia, law firm, Robert Jett Ingram, Jr., telephoned Mr. Bryant and told him that he, Mr. Ingram, doubted that Mr. Fox's signature was a forgery because Mr. Fox had raised similar defenses in previous business disagreements. In addition, Mr. Bryant states that he received a letter from the Secretary of State of Tennessee indicating that that office had revoked the corporate charter of an entity called Knoxville Jet–A–Way in 1984 because the entity had failed to file an annual report. Based on the information from Mr. Ingram and the letter from the Secretary of State, Mr. Bryant asserts, he advised C.I.T. to add Mr. Fox as a defendant to its contract action. Carlton M. Hinton, C.I.T.'s division manager in Knoxville at the time the company filed suit against Knoxville Jet–A–Way and Mr. Fox, states on affidavit that on receiving this advice from Mr. Bryant, he instructed Mr. Bryant to do "what he thought should be done to adequately protect C.I.T.'s interest." Mr. Hinton states that he did not know Mr. Fox personally at the time and denies that he ever harbored any malice towards him.

Mr. Fox responds to C.I.T.'s evidence by adducing an affidavit of Mr. Ingram. Mr. Ingram confirms that he spoke with Mr. Bryant but denies that he ever cast any doubt on the veracity of Mr. Fox's assertions. Instead, he states, he repeated Mr. Fox's "vehement" denials that he had signed the lease document and Mr. Fox's position that no Knoxville Jet–A–Way employee had express or implied authority to enter into such a contract. In addition, he says, he "spent some time speculating" with Mr. Bryant either at that time or a

few days later as to who might have forged Mr. Fox's signature.

The diverse citizenship of the parties gives this court jurisdiction under 28 U.S.C. § 1332 (1982), since the amount in controversy exceeds $10,000. Virginia choice-of-law rules govern this tort suit. *Klaxon v. Stentor Mfg. Co., Inc.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Thornhill v. Donnkenny, Inc.,* 823 F.2d 782 (4th Cir.1987). Under Virginia law, whether a tort occurred is determined by the law of the place where assertedly tortious events took place. *McMillan v. McMillan,* 219 Va. 1127, 1129–31, 253 S.E.2d 662, 663–65 (1979); *State of Maryland v. Coard,* 175 Va. 571, 580–81, 9 S.E. 2d 454, 458 (1940); *C.I.T. Corp. v. Guy,* 170 Va. 16, 195 S.E. 659, 663 (1938). Because C.I.T. sued Mr. Fox over the asserted lease in Tennessee, Tennessee law of malicious prosecutions governs this case.

To establish a claim for malicious prosecution, a plaintiff must prove three elements: (1) that the suit over which the plaintiff asserts the claim was finally determined in plaintiff's favor; (2) that the defendant brought the prior suit out of malice; and (3) that defendant brought the suit without probable cause. *Buda v. Cassel Bros., Inc.,* 568 S.W.2d 628, 631 (Tenn.Ct. App.), *Tenn. cert. denied, id.* (1978). C.I.T. concedes that its contract suit against Mr. Fox was finally determined in Mr. Fox's favor. The company argues, however, that it is entitled to summary judgment as to the second two elements.

Tennessee's courts have elaborated the meaning of the terms malice and probable cause. "Any improper motive is sufficient to constitute malice." *Lawson v. Wilkinson,* 447 S.W.2d 369, 374 (Tenn.Ct.App.), *Tenn. cert. denied, id.* (1969). Tennessee's courts have adopted *Restatement (Second) of Torts* § 675 (1977), which provides that:

> One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of facts upon which the claim is based, and either

(a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or (b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information.

*Buda, supra,* 568 S.W.2d at 631. A "state of facts as would excite in a reasonable mind the belief" that one's claim is valid amounts to probable cause. *Lawson, supra,* 447 S.W.2d at 373. One who files suit for a purpose other than "proper adjudication of the claim," on the other hand, lacks probable cause. *Buda,* 568 S.W.2d at 631.

C.I.T. argues that the affidavits it adduces show that Mr. Hinton relied on the advice of counsel in deciding to add Mr. Fox as a defendant to C.I.T.'s lawsuit against Knoxville Jet–A–Way. The company contends that under Tennessee law "when advice of counsel has been honestly sought and all the material facts relating to the case, ascertained or ascertainable by the exercise of due diligence, have been presented to counsel, and a prosecution is commenced pursuant of such advice, then such advice entitles the party sued for malicious prosecution to complete immunity from damages."

As outlined above, Tennessee case law indicates that defendant's reliance on counsel's informed advice could indeed bar a claim of malicious prosecution, but with several conditions. As defendant concedes, defendant must have fully informed counsel of the facts underlying its claim. In addition, defendant must believe that these facts are true, and this belief must be objectively reasonable. Finally, defendant must have sought counsel's advice in good faith.[2]

To survive C.I.T.'s motion for summary judgment, Mr. Fox must "make a showing sufficient to establish the existence" of all elements essential to his claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2522, 91 L.Ed.2d 265 (1986). *See* Fed.R.Civ.P. 56(c). "[A]n absence of evidence to support" Mr. Fox's claim would require a grant of summary judgment for C.I.T. *Id.* at 325, 106 S.Ct. at 2554. Moreover, to the extent that C.I.T. has adduced evidence tending to disprove one or more elements of Mr. Fox's claim, Mr. Fox bears the burden of showing that an issue of material fact exists as to each of these elements and that this dispute is "genuine" and goes beyond "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1354–55, 89 L.Ed.2d 538 (1986). This burden on plaintiff "by no means authorizes trial on affidavits." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). At this stage, the court must believe any evidence Mr. Fox adduces and leave credibility determinations for the finder of fact at trial. *Id.* The finder of fact must settle any issues that "may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. "[T]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable" to Mr. Fox. *Matsushita Electric Industrial Co., supra,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

At this stage, then, the court must believe the facts recited in the affidavits of Mr. Fox and Mr. Ingram about what they said to C.I.T.'s personnel and to Mr. Bryant, C.I.T.'s attorney. In addition, the court must view any inferences to be drawn from these facts in the light most favorable to Mr. Fox. The court assumes for purposes of this motion, therefore, that

---

**2.** Under Tennessee law, that defendant lacked probable cause is an essential element of plaintiff's claim. Plaintiff therefore will bear the burden of proving that defendant lacked probable cause when it sued him. Defendant argues that its reliance on counsel's informed advice is an "absolute" defense to a claim for malicious prosecution. At this juncture, the court need not define the precise parameters of plaintiff's burden of proving lack of probable cause and of defendant's burden of proving its affirmative defense. The court need only decide if plaintiff has adduced sufficient evidence, if substantiated at trial, so that a trier of fact could reasonably find in his favor. *See Anderson, supra,* 477 U.S. at 250–51, 106 S.Ct. at 2511.

**500**

Messrs. Fox and Ingram both told C.I.T. personnel or its attorney that Mr. Fox's signature had been forged. A suspicious discrepancy between the way Mr. Fox's name was signed to the disputed contract document and his acknowledged signature was perceptible to one of C.I.T.'s employees. In addition, this fact and Mr. Fox's testimony at the trial allow the inference that C.I.T. did not investigate Mr. Fox's statements sufficiently for its belief in the existence of the facts on which it based its contract claim against him to have been objectively reasonable. The court will assume also that the statements of Messrs. Bryant and Hinton about what Mr. Ingram told Mr. Bryant are inaccurate, and as such they support the inference that at least Mr. Bryant and possibly Mr. Hinton are not truthful in their affidavits. The court finds that it would not be outside the realm of reason for a trier of fact to find for plaintiff based on this evidence, if plaintiff substantiates it at trial, and if all reasonable inferences drawn from the evidence are viewed in plaintiff's favor. The court notes that at trial plaintiff will bear a "heavy burden" to establish lack of probable cause. *Buda, supra,* 568 S.W.2d at 631.

C.I.T. asserts that it has adduced uncontradicted evidence that its personnel relied on counsel after fully disclosing to counsel all relevant facts within C.I.T.'s knowledge. A trier of fact could reasonably conclude, however, that this evidence is contradicted by the inference that Messrs. Bryant and Hinton were not truthful in their affidavits. A party opposing summary judgment must do more than argue that a reasonable trier of fact could disbelieve testimony offered by the moving party. *Anderson, supra,* 477 U.S. at 256–57, 106 S.Ct. at 2514. Here, however, plaintiff offers testimony to indicate not merely that defendant's evidence is untrue but that it is untrue as to facts central to the issue of whether defendant acted with probable cause. Moreover, reliance on counsel's advice establishes probable cause only if several conditions, described above, are met. The facts that Messrs. Bryant and Hinton aver in their affidavits do not unambiguously indicate that defendant's personnel undertook

sufficient investigation for their belief in the existence of the facts on which they based their claim against Mr. Fox to have been objectively reasonable, or that they disclosed to counsel all facts that, had their investigation been sufficient, they reasonably should have known.

For these reasons, the court denies defendant's motion for summary judgment and will enter an appropriate order this day. The court invites the parties to request an expedited trial of this matter.