## IN THE COURT OF APPEALS OF TENNESSEE,
### AT NASHVILLE

**FILED**

**September 1, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

_____

|  |  |  |
|---|---|---|
| **TIM TAYLOR**, | ) | Warren County Chancery Court |
|  | ) | No. 6472 |
| Plaintiff/Appellee/Cross-Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9804-CH-00211 |
|  | ) |  |
| **ROBERT L. MORRIS**, | ) |  |
|  | ) |  |
| Defendant | ) |  |
|  | ) |  |
| **AND** | ) |  |
|  | ) |  |
| **TERRY MUNCEY**, | ) |  |
|  | ) |  |
| Defendant/Appellant/Cross-Appellee. | ) |  |

_____

From the Chancery Court of Warren County at McMinnville.

**Aubrey L. Harper**, McMinnville, Tennessee
Attorney for Defendant/Appellant/Cross-Appellee, Terry Muncey.


**Diana C. Benson**,
TRAIL & TRAIL, Murfreesboro, Tennessee
Attorney for Plaintiff/Appellee/Cross-Appellant.


OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

Defendant Terry Muncey appeals, and Plaintiff Tim Taylor cross-appeals, the trial court's judgment awarding Muncey $1000 in damages on his counterclaim for wrongful injunction against Taylor. We reverse the trial court's judgment based upon our conclusion that Muncey failed to meet his burden of proving the elements of his claim for wrongful injunction.

In December 1996, Plaintiff Tim Taylor and Defendant Robert L. Morris[1] entered into a contract whereby Morris agreed to sell, and Taylor agreed to purchase,

> [a]ll markable timber 14 in. and up on 25 acres more or less, [located] in the Vervilla community, in Warren Co. McMinnville, Tenn. This includes the whole tree, with 12 mo. to remove said timber from day contract is signed, with all necessary right of ways on subject property.

At the time they entered into the contract, Taylor and Morris discussed the fact that, before he could remove the timber from Morris's property, Taylor would need to obtain a right-of-way or easement from a neighboring landowner. The parties agreed that the twelve-month contract period would not run during the time Taylor was trying to obtain the necessary easement. The parties planned to fill in the date on the contract once Taylor obtained the easement. At that time, Taylor also would pay Morris the purchase price of $15,000.

In early April 1997, Taylor contacted Morris to advise him that he had obtained the necessary easement and that he was ready to pay the $15,000 purchase price and begin cutting timber on Morris's property. Morris responded by stating that he recently had agreed to sell the timber to Defendant Terry Muncey instead of Taylor, and Morris refused to honor Taylor's contract.

Consequently, Taylor filed this lawsuit against Morris and Muncey in which he sought specific performance of his contract with Morris or, alternatively, $50,000 in damages for Morris's breach of the contract. Taylor's complaint, filed April 28, 1997, also asked the trial court to issue a restraining order[2] preventing the Defendants from removing any of the timber from

---

[1]Defendant Robert L. Morris is not a party to this appeal.

[2]*See* T.R.C.P. 65.03.

Morris's property pending a hearing on the parties' respective rights to the timber.

Although the record on appeal does not contain a restraining order, the trial court apparently issued the restraining order requested in Taylor's complaint because the subsequent pleadings referred to such an order. In his answer, Terry Muncey asserted several counterclaims, including the claim that he had been wrongfully restrained or enjoined from exercising his right to harvest the timber.

In June 1997, the trial court held a hearing on Taylor's Motion for Restraining Order. Although the appellate record is not clear on this point, we can only surmise that the actual purpose of the June 1997 hearing was to determine whether the trial court should issue a temporary injunction, as opposed to a restraining order which the court already had issued. *Compare* T.R.C.P. 65.03 (requirements for restraining order) *with* T.R.C.P. 65.04 (requirements for temporary injunction). This time, the trial court denied Taylor's request for injunctive relief based upon his failure to prove that he would suffer immediate and irreparable injury if the injunction was not granted. *See* T.R.C.P. 65.04(2).

At the subsequent trial held in November 1997, Tim Taylor testified that, when the contract was executed, he and Morris discussed the fact that Taylor might need six months or more to obtain the necessary easement. According to Taylor, Morris indicated that this time frame was acceptable. Taylor believed that the contract obligated him to attempt to obtain the necessary easement so that he could fulfill the terms of the contract. Taylor agreed, however, that he could have "walked away" from the contract without obligation if he failed to obtain the easement. Taylor also acknowledged writing a letter to Morris during their contract negotiations wherein Taylor indicated that he would return Morris's copy of the contract and a cashier's check for $15,000 "if" Taylor was able to obtain the easement.

In defending the breach of contract action, Robert Morris acknowledged that, in the past, prospective purchasers had experienced difficulty in obtaining the easement needed to remove the timber. In Morris's opinion, the contract he signed with Taylor obligated him to sell the timber to Taylor only if Taylor was able to obtain the necessary easement within a reasonable period of

time. Morris testified that he considered ninety days to be a reasonable length of time. Morris later testified, however, that he did not consider the contract to be a contract at all. Morris testified that he only signed the contract so that Taylor could use the document to obtain the easement. Morris further testified that, when he spoke to Taylor in March 1997, Taylor indicated that he had been unable to obtain the easement and that the bank would not loan him the purchase money for the timber. Based on this information, Morris believed that Taylor would be unable to perform the contract, and in April 1997 he agreed to sell the timber to Muncey instead. Taylor never returned a signed, dated copy of the contract to Morris.

Terry Muncey testified that he first learned of the existence of the restraining order on April 30, 1997, and that the restraining order prevented him from cutting timber for a total of forty-eight days.[3] Muncey was unable, however, to quantify any damages he suffered as a result of this delay. Muncey testified that, during the 48-day period, he worked on other jobs and earned in excess of $11,000. At the time of trial, Muncey had cut over $40,000 worth of timber on Morris's property. Muncey estimated that, when the job was over, he would have cut about $60,000 worth of timber. Muncey suggested that, had he been able to start the job sooner, he would have earned this $60,000 sooner and begun drawing interest on the money. Muncey presented no evidence, however, as to how much interest he would have earned. When pressed by the trial court and the attorneys, Muncey could only state that he believed an award of $3000 would be fair.

At the trial's conclusion, the trial court dismissed Tim Taylor's breach of contract claim against Robert Morris based upon Taylor's failure to meet his burden of proving this claim. The trial court also entered a judgment against Taylor on Terry Muncey's counterclaim for wrongful injunction. Specifically, the trial court found that the restraining order was "unwarranted," that Muncey had been wrongfully restrained, and that he had suffered damages in the amount of $2000. The trial court entered a judgment for this amount against Taylor and in favor of Muncey. Upon Taylor's motion to amend the judgment, the trial court later reduced the award to $1000. This appeal followed.

---

[3]The record on appeal does not contain the restraining order and, thus, does not explain why Muncey was restrained for forty-eight days. Unless extended by the trial court, restraining orders automatically expire at the end of fifteen days. *See* T.R.C.P. 65.03(5). The record does not indicate that the trial court extended the restraining order in this case.

Muncey's brief on appeal purports to raise six issues for this court's consideration. In our view, these issues may be summarized as (1) whether the trial court erred in awarding Muncey only $1000 in damages on his counterclaim for wrongful injunction, and (2) whether the trial court erred in failing to require Taylor to post an injunction bond prior to issuance of the restraining order. On cross-appeal, Taylor contends that Muncey was not entitled to any damages because Muncey failed to prove that he was wrongfully restrained from removing the timber and, further, because Muncey failed to prove that he suffered actual damages as a result of being restrained. We believe that the first issue raised on cross-appeal by Taylor is dispositive of this appeal.

Tennessee decisions establish the existence of two kinds of wrongful injunction actions.[4] The first type of wrongful injunction action consists of an action on an injunction bond. *See Shanks v. Pyne*, 174 S.W.2d 461, 463 (Tenn. 1943); *Pyott Land & Mining Co. v. Tarwater*, 150 S.W. 539, 540 (Tenn. 1912). The Tennessee Rules of Civil Procedure require the applicant for a restraining order or temporary injunction to post an injunction bond. Specifically, the rules provide that

> [e]xcept in such actions as may be brought on pauper's oath, no restraining order or temporary injunction shall be granted except upon the giving of a bond by the applicant, with surety in such sum as the court to whom the application is made deems proper, for the payment of such costs and damages as may be incurred or suffered by any person who is found to have been wrongfully restrained or enjoined.

T.R.C.P. 65.05(1). In order to recover in an action on an injunction bond, the defendant in the original injunction suit need only show that he was wrongfully restrained or enjoined. T.R.C.P. 65.05(1). In such an action, the defendant's recovery is limited to the amount of the bond. *Shanks*, 174 S.W.2d at 463; *Pyott Land & Mining Co.*, 150 S.W. at 540.

The second type of wrongful injunction action is in the nature of a malicious prosecution action. *Hawkins v. Hubbell & Houser*, 154 S.W. 1146, 1147 (Tenn. 1913). In order

---

[4]The Supreme Court of Texas has provided a helpful explanation of the differences in the two types of wrongful injunction actions. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 685-86 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991).

to recover under this theory, the defendant in the original injunction action must show not only that he was wrongfully restrained or enjoined, but that the plaintiff acted maliciously and without probable cause in seeking the injunction. *Id*.; *see also Shanks*, 174 S.W.2d at 463; *Pyott Land & Mining Co.*, 150 S.W. at 540. Because recovery under this theory is not dependent upon the existence of an injunction bond, the defendant's recovery is not limited to the amount of the bond. *Shanks*, 174 S.W.2d at 463; *Hawkins*, 154 S.W. at 1147; *Pyott Land & Mining Co.*, 150 S.W. at 540.

Inasmuch as no injunction bond was provided in this case,[5] Muncey's counterclaim for wrongful injunction necessarily was predicated on a malicious prosecution theory. *Hawkins*, 154 S.W. at 1147. Accordingly, in order to recover against Taylor, Muncey was required to show that Taylor acted maliciously and without probable cause in seeking the restraining order against Muncey. *Id*.; *see also Shanks*, 174 S.W.2d at 463; *Pyott Land & Mining Co.*, 150 S.W. at 540. After carefully reviewing the record in this case, we conclude that Muncey's counterclaim for wrongful injunction must fail because of Muncey's failure to prove these elements.

In a malicious prosecution action, the claimant bears a heavy burden of proving the elements of malice and lack of probable cause. *Kauffman v. A.H. Robins Co.*, 448 S.W.2d 400, 404 (Tenn. 1969); *Buda v. Cassel Bros., Inc.*, 568 S.W.2d 628, 631 (Tenn. App. 1978). The claimant need not establish actual malice in the sense of ill will or personal hatred. Rather, the claimant may establish malice by showing that the prosecutor had any improper motive, *i.e.* any motive other than a good faith purpose to bring the claimant to justice. *Morgan v. Duffy*, 30 S.W. 735, 735 (Tenn. 1895); *Sullivan v. Young*, 678 S.W.2d 906, 911 (Tenn. App. 1984); *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 251 (Tenn. App. 1982); *Lawson v. Wilkinson*, 447 S.W.2d 369, 374 (Tenn. App. 1969); *Peoples Protective Life Ins. Co. v. Neuhoff*, 407 S.W.2d 190, 199 (Tenn. App. 1966); *Thompson v. Schulz*, 240 S.W.2d 252, 255 (Tenn. App. 1949). On the other hand, the claimant

---

[5]On appeal, Muncey has complained about the trial court's failure to require Taylor to post an injunction bond prior to issuance of the restraining order. In our view, it was incumbent upon Muncey to bring this oversight to the attention of the trial court in a timely manner. *See Pyott Land & Mining Co.*, 150 S.W. at 540; T.R.C.P. 65.05(3). Muncey did not complain about Taylor's failure to provide a sufficient bond until he filed his answer on June 12, 1997, five days before the June 17, 1997, temporary injunction hearing. As we previously discussed, the April 1997 restraining order should already have expired by that time. *See supra* note 3.

cannot establish the element of malice if the evidence shows that the prosecutor was motivated primarily by the intention to bring the claimant to justice, even if the prosecutor was influenced to some extent by other improper considerations. *Cohen v. Ferguson*, 336 S.W.2d 949, 953-54 (Tenn. App. 1959) (citing 34 Am. Jur. *Malicious Prosecution* § 45, at 729).

In the present case, the record contains no evidence that Taylor was guided by any improper motive in seeking the restraining order against Muncey. Instead, the evidence showed that Taylor had in his possession a contract which he believed gave him rights to cut timber on Morris's land that were superior to any rights that had been granted to Muncey. The sole purpose of Taylor's lawsuit appeared to be to test the strength of his contract against that of Muncey. Although the trial court ultimately ruled that Taylor's contract was unenforceable and that the restraining order against Muncey was "unwarranted," these rulings did not require the trial court to find in favor of Muncey on his counterclaim for wrongful injunction. In the absence of any evidence suggesting that Taylor was motivated by an improper purpose, *i.e.* any purpose other than to see that justice was done, Muncey's claim for wrongful injunction must fail.

In light of our resolution of this issue, we need not address the remaining issues raised by the parties on appeal. The trial court's judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Muncey, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
LILLARD, J. (Concurs)