Tom D. SULLIVAN, Plaintiff-Appellant,

v.

Logan YOUNG, Defendant-Appellee.

Tom D. SULLIVAN, Plaintiff-Appellant,

v.

Edward P. RUSSELL,
Defendant-Appellee.

Court of Appeals of Tennessee,
Western Section at Jackson.

July 11, 1984.

Permission to Appeal Denied by
Supreme Court Oct. 1, 1984.

Walter Buford, Memphis, for plaintiff-appellant.

Hal Gerber, Memphis, for defendant-appellee Logan Young.

Leo Bearman, Jr., Memphis, for defendant-appellee Edward P. Russell.

HIGHERS, Judge.

This case arises out of complaints filed against each of the defendants alleging malicious prosecution, false arrest, libel and slander. The cases were consolidated

for trial and at the conclusion of all the proof, the trial court directed verdicts in favor of the defendants. The plaintiff appeals.[1]

On October 19, 1976, the defendant, Logan Young, Jr., swore out a warrant against the plaintiff, Tom D. Sullivan, on a charge of fraudulent breach of trust. The warrant was subsequently dismissed, and Sullivan brought separate suits against Young and his attorney, Edward P. Russell.

The events leading to this action commenced in May 1975 when Logan Young, Jr., Tom "Silky" Sullivan, and William D. George agreed to enter business together in the operation of the Garden Club. Young furnished the capital and Sullivan and George, who were already equal shareholders in Silky's, Inc. were to supervise the renovation of the building in which the Garden Club was to be located and were to operate the business. According to the initial proposal, Young was to contribute $49,000.00 and a corporation was to be formed. Sullivan and George were not to receive any compensation until after Young's original investment had been repaid. Sullivan and George were then to receive 25% each of the corporation's stock and a salary arrangement was to be made for them. The club opened August 1975, and Young eventually contributed $140,-000.00, but he never received any repayment of his investment.

In the fall of 1975, Young fired Sullivan and George and brought the matter to the attention of his attorney, Edward P. Russell. In investigating the situation, Russell turned over all the books and records of the business to Eleanor Chapman, a public accountant. She reported that Sullivan and George had diverted money from the business for their personal use. After further investigation, Russell brought the information to the attention of the District Attorney-General, Hugh Stanton, who advised Russell to contact the Fraud and Document Squad of the Memphis Police Department. Russell discussed the matter with Lieuten-

ant Joe Tucker and with Sergeant E.M. White. White advised that the evidence amply warranted prosecution. Young swore out a warrant for Sullivan's arrest on October 19, 1976, for fraudulent breach of trust. The matter was further reviewed by the prosecutor, Assistant Attorney-General Thomas E. Crawford. The warrant was subsequently dismissed, however, before the City Court.

With reference to the allegations of defamation, Darnell Smith, an employee of Sullivan, testified that Russell and Young came into Silky's and told him that Sullivan was a crook and a thief. Stephen McCutchin, who was employed by the Garden Club, testified that Young spoke to him on one occasion about Sullivan, and said, "Let's go beat him up." Sullivan also offered exhibits and testimony from Richard Hawley of WMC television that the arrest was reported on the local news program, but this evidence was not allowed to go to the jury because it appeared that the source was the Memphis Police Department rather than the defendants. Russell acknowledged that he disclosed to a newspaper reporter that a warrant had been or was about to be issued for Sullivan's arrest, but he asked him not to report the story until after a preliminary hearing was held. Russell stated that to his knowledge no newspaper article ever appeared.

We may dispose at the outset of the allegation of false arrest. It is stated at 32 Am.Jur.2d, False Imprisonment § 4:

False imprisonment and malicious prosecution are closely related causes of action, and the two are sometimes confused by the courts. However, the distinction between them is fundamental, the essential difference being the validity of the legal authority for the restraint imposed. In malicious prosecution the detention is malicious but under due form of law, whereas in false imprisonment the converse is true. The detention is unlawful, but malice and lack of probable cause are not essential as a general

---

**1.** The parties will be referred to as they appeared in the trial court, or by their names.

rule, to the cause of action. Thus, where the process on which an arrest is made is regular and legal in form and issued by a court of competent authority, but is sued out maliciously and without probable cause, the remedy is an action for malicious prosecution. But a suit for false arrest or imprisonment is the proper action where the aggrieved party is arrested without legal authority, as where he is arrested pursuant to process that is void. In the case of malicious prosecution, the valid process justifies the restraint or imprisonment, and the gist of the cause of action is malice or evil intent. In false imprisonment, on the other hand, the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification.

Further, in Prosser, *The Law of Torts* (4th ed. 1971), p. 49, it is said:

The distinction between the two lies in the existence of valid legal authority for the restraint imposed. If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized, the court and its officers are not his agents to make the arrest, and their acts are those of the law and the state, and not to be imputed on him. He is therefore liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose. The action must be for malicious prosecution, upon proof of malice and want of probable cause, as well as termination of the proceeding in favor of the plaintiff.

■ In this case there is no issue about the validity of the arrest warrant which was effected. The arrest of the plaintiff was, therefore, pursuant to lawful authority, and the action here is not one for false arrest.

■ Neither is there a libel in this case. The reports from the television station, which were marked for identification but not exhibited to the jury, clearly attributed their source to the Memphis Police Department and not to these defendants. There is no proof in the record which establishes a connection between the defendants and the alleged libel. We find no error in the action of the trial judge in excluding this evidence and in directing a verdict on this issue.

The plaintiff bases his allegation of slander upon several incidents. He claims that Russell caused the news of the issuance of an arrest warrant to be broadcast over television by giving the information to a local newspaper reporter. He also states that Russell and Young both said to Darnell Smith, an employee of plaintiff, that Sullivan was a crook. Rose Long, who formerly dated Sullivan, testified that two women with Young approached her and told her that she should not associate with Sullivan. As a result, Long stated that she discontinued her social relationship with Sullivan.

■ Both Young and Russell deny making the statement to Darnell Smith that Sullivan was a crook, but for purposes of our review we must disregard evidence contrary to the party against whom a directed verdict is granted. *Sauls v. Evans*, 635 S.W.2d 377 (Tenn.1982). The plaintiff must not only prove publication of a false statement to a third person, but he must also prove actual damages. *Memphis Publishing Company v. Nichols*, 569 S.W.2d 412 (Tenn.1978); *Handley v. May*, 588 S.W.2d 772 (Tenn.App.1979). There is no evidence that the statement to Smith, or the statements by Young's companions, caused damage to the plaintiff. Smith testified that he did not repeat the statement to anyone, that no one else heard it, and that his estimation of Sullivan was not diminished by the remarks of defendants.

The plaintiff further claims that the defendants defamed him through the news report of his arrest. It is alleged that Russell informed a newspaper reporter of the warrant before it was issued and because of this, the item appeared on WMC-TV news on the morning and evening of October 22, 1976. Lieutenant Tucker testified, however, that Russell notified a news-

paper reporter before the warrant was "served."

■ The defendants argue that any statements made in connection with the warrant are privileged, that the plaintiff established no connection between what Russell told the newspaper reporter and the broadcasting of the story on television, and that the statements in the television newscast were all derived from police sources, not from the defendants. We believe that the arguments of defendants have merit. Statements made in the course of a judicial proceeding are absolutely privileged. *Lambdin Funeral Service, Inc. v. Griffith,* 559 S.W.2d 791 (Tenn.1978). Further, there is no evidence to indicate that Russell did more than advise a reporter that an arrest warrant had been issued, a statement which is not defamatory. The plaintiff testified that he suffered depression as a result of the arrest, but such depression would relate only to the allegations in the arrest warrant. Although one may recover for humiliation and mental anguish, as set forth in *Moore v. Bailey,* 628 S.W.2d 431 (Tenn.App.1981), one may not recover for damage resulting from defamation which is privileged. Thus, from evidence adduced at trial, the plaintiff was unable to establish that he was damaged by any actionable defamatory remarks.

■ With reference to the claim of malicious prosecution, it is necessary for the plaintiff to establish that a criminal proceeding has been instituted by the defendants against the plaintiff, that such proceeding terminated in favor of the accused, that there was an absence of probable cause, and that there was malice or a primary purpose other than that of bringing the offender to justice. *Landers v. Kroger Co.,* 539 S.W.2d 130 (Tenn.App. 1976). A showing of a lack of probable cause will give rise to a rebuttable presumption of malice. *Kerney v. Aetna Casualty and Surety Co.,* 648 S.W.2d 247 (Tenn.App.1982). A showing of malice, however, raises no presumption of lack of probable cause. *Cohen v. Cook,* 62 Tenn. App. 292, 462 S.W.2d 502 (1969).

■ The defendants contend there is no want of probable cause in this case, based upon the defense of advice of counsel. Generally, probable cause is established where prosecution was instituted with advice of counsel. *Lawson v. Wilkinson,* 60 Tenn.App. 406, 447 S.W.2d 369 (1969). The prosecuting attorney is counsel whose advice can constitute a defense to an action for malicious prosecution. *Mullins v. Wells,* 60 Tenn.App. 675, 450 S.W.2d 599 (1969).

The plaintiff responds by pointing out that advice of counsel is not a defense where the defendant fails to disclose all the facts which are ascertainable by due diligence. *Klein v. Elliot,* 59 Tenn.App. 1, 436 S.W.2d 867 (1968); *Mitchell v. George,* 63 Tenn.App. 408, 474 S.W.2d 131 (1971). In the *Klein* case, however, it was held that there was evidence from which the jury could find that the defendant had not made full disclosure to the district attorney. In *Mitchell,* the defendant brought forward all the facts known to him. In neither case did the Court concern itself with the scope of the personal investigation made by the defendants. Here the plaintiff does not argue that the defendants misstated or withheld any of the facts from the authorities, but that they failed to investigate thoroughly before going to the district attorney. In other words, the plaintiff's case of malicious prosecution revolves around the question of whether the defendant failed to disclose all ascertainable, as well as ascertained, facts to the authorities.

The plaintiff avers that defendants did not disclose all the ascertainable facts. He states that the accountant who was employed to examine the books did not contact him to ask for an explanation, nor did the defendants themselves ask for an explanation. The plaintiff further states that neither the assistant district attorney-general nor Sergeant White were provided copies of the voucher and the check stub which would have explained the use of the check on which the warrant was sworn. Neither was Sergeant White given the bank docu-

ments which authorized the plaintiff to write checks.

The defendants point out, however, that the voucher was in Sullivan's sole possession. The bank record was unknown to the defendants at the time. The defendants did not, therefore, withhold any information which was known to them. The plaintiff contends that the defendants had an obligation not only to give the facts known to them at the time, but also to provide those which were ascertainable in the exercise of due diligence.

■ In Tennessee, it is settled that to invoke the defense of advice of counsel, the defendant "must state not only all material facts within his knowledge but all facts which he had reasonable ground to believe existed at the time of making the statement, or all material facts which he could have ascertained by reasonable diligence." *Union Stockyards, Inc. v. Grissim*, 13 Tenn.App. 115, 125 (Tenn.App.1930).

■ We note, however, that there is a marked difference in cases where a person reports what he knows to the police or other public official. In *Cohen v. Ferguson*, 47 Tenn.App. 165, 336 S.W.2d 949 (1959), the defendant called the police to have them investigate plaintiff's conduct. The police assumed control of the investigation, and brought charges against the plaintiff. The defendant was not liable for malicious prosecution because he furnished information to the authorities. The Court quoted with approval the following language from 34 Am.Jur., Malicious Prosecution, § 47:

> It is to be noted that the conduct of the defendant is to be weighed in view of what appeared to him at the time of instituting the prior proceeding, not in the light of subsequently appearing facts.

336 S.W.2d at 952.

■ In *Kauffman v. A.H. Robins Company*, 223 Tenn. 515, 448 S.W.2d 400 (1969), the defendant filed a complaint with the Tennessee Board of Pharmacy against the plaintiff, who subsequently sued the defendant for malicious prosecution. The Supreme Court noted that the "situation is not unlike that of reporting violations of the criminal law to law enforcement officers. Where facts are fully disclosed in good faith and with probable cause to believe they are true, a reporting party is not liable in an action for malicious prosecution if the public official erroneously institutes a criminal proceeding." 448 S.W.2d at 403. It should be remembered that the question is not whether the accused is really guilty, but whether good and reasonable grounds exist for the prosecutor to believe that he is. *Cohen v. Ferguson, supra.* Where law enforcement officials conduct an independent investigation and make their own evaluation therefrom, it is sufficient to establish the defense of advice of counsel if the prosecutor shows that he has made a full disclosure in good faith of the facts within his knowledge at the time of the investigation. The record discloses in this case that the defendants made a thorough investigation before instituting proceedings, that they conferred both with police officers and the office of the attorney-general, and that they made a full disclosure of all facts known to them as a result of their examination of the books and records.

■ The advice of counsel defense goes to the element of probable cause in a malicious prosecution case. When the facts are not in dispute, the issue of probable cause is exclusively for the court. *Lewis v. Williams*, 618 S.W.2d 299 (Tenn.1981); *Landers v. Kroger Co., supra.* When the defense is proved by uncontradicted evidence upon which reasonable minds could reach but one conclusion, the trial court must direct a verdict for the defendant. *Mitchell v. George, supra; People's Protective Life Insurance Co. v. Neuhoff*, 56 Tenn.App. 346, 407 S.W.2d 190 (1966).

■ In this case the defendants did not have access to the documentary material which the plaintiff says would have exonerated him, but they made a thorough disclosure of all documents in their possession. We do not believe they acted without prob-

able cause because of documents which they did not know were in existence.

We find no error in the action of the trial court in directing a verdict for the defendants on all issues. The judgment is affirmed, and costs are assessed against the plaintiff-appellant.

TOMLIN and CONNER, JJ., concur.