Eugene SMITH, Plaintiff–Appellant,

v.

HARFORD MUTUAL INSURANCE CO., Archie R. Carpenter, Luke Bright, General Adjustment Bureau, Inc., J.P. Thompson, and Richard T. Chance & Associates, Inc., Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

Oct. 27, 1987.

Permission to Appeal Denied by Supreme Court Jan. 25, 1988.

Randall E. Nichols with Harwell & Nichols, Knoxville, for plaintiff-appellant Eugene Smith.

Jerry G. Cunningham with Thomas & Cunningham, P.A., Maryville, for defendant-appellee Luke Bright.

Ronald C. Koksal with Butler, Vines, Babb & Threadgill, Knoxville, for defendant-appellee Archie Carpenter.

William D. Vines, III and Will Derington with Butler, Vines, Babb & Threadgill, Knoxville, for defendant-appellee Richard T. Chance & Associates, Inc.

Dalton L. Townsend and Julia S. Howard with Hodges, Doughty & Carson, Knoxville, for defendant-appellee Harford Mut. Ins. Co.

## OPINION

SANDERS, Presiding Judge (E.S.).

The Plaintiff has appealed from a directed verdict in his suit for malicious prosecution against the Defendants in connection with a fire that destroyed Oak Ridge Motor Company in Oak Ridge, Tennessee.

The Oak Ridge Fire Department responded to a blaze at Oak Ridge Motor Company on December 1, 1981, and reported the origin of the blaze as being suspicious. The fire burned the showroom and garage of the business, which was owned by Danny Schultz. Shortly after the fire Jess Hodge, the State Fire Marshal, investigated the fire scene and took samples for testing. Defendant–Appellee Luke Bright, an assistant Deputy Fire Marshall, worked for Jess Hodge and was the primary investigator for the Fire Marshal's office and special investigator for the Attorney General of Anderson County of the fire at Oak Ridge Motor Company.

Defendant–Appellee Harford Mutual Insurance Company [Harford] was the insurance carrier on the building. Harford hired attorney Defendant–Appellee Archie Carpenter to represent them in the fire loss case and to act as a clearing house for the reports of the various investigators. Harford also hired Defendant–Appellee General Adjustment Bureau, Inc., [GAB] to investigate the fire. Defendant–Appellee J.P. Thompson, an investigator with property damage evaluation expertise, worked for GAB. In addition, Harford hired Defendant–Appellee Richard T. Chance of Richard T. Chance & Associates, Inc., of Virginia, who had extensive experience in arson and fraud investigation.

J.P. Thompson of GAB went to the fire scene the day after the fire and again with Richard Chance on December 4. While at Oak Ridge Motor Company, they talked with various employees of Schultz. Chance asked them for information concerning the fire. Carl Raines, an employee of Danny Schultz, was present on December 4. According to Carl Raines, Chance and Thompson told Raines there was a $25,000 reward for information concerning the fire. Chance gave his card to Raines and requested Raines to call Chance if Raines had any information. Chance found from his investigation the fire had two origins and other indices of arson were present.

After Chance returned to Virginia, Raines did call and say he had some information concerning the fire, but said he would have to have some money to furnish the information. Apparently Mr. Chance then talked to Harford and was told to clear the matter through Carpenter. Chance then referred Raines to Carpenter.

Carpenter met with Raines on January 8, 1982. After obtaining approval from Harford, Carpenter told Raines the company would give him $2,500 for his information concerning the fire if his information could be corroborated by other proof. Raines rejected the offer and left Carpenter's office.

Early in February, Sam West, the Assistant District Attorney of Anderson County, called Richard Chance in Virginia and said that Raines wanted to make a statement. Chance returned to Knoxville and on February 11, 1982, Chance, with Sam West, and Luke Bright, the Assistant Deputy Fire Marshal, met with Carl Raines. At that meeting a tape recorded statement was taken from Raines.

In the statement Raines accused Plaintiff Eugene Smith, Loran Wichser and Danny Schultz of conspiring to burn Oak Ridge Motor Company. Wichser, an associate of Schultz, was said to be the middleman between Smith and Schultz. Raines said he heard Smith agree to burn the building and that a key was to be left for Smith's use. Raines also said the mortgagee was threatening to foreclose on the mortgage on the building and that inventory and furniture had been moved out of the burned building before the fire.

Shortly after the statement was taken, Raines gave a notarized statement to Danny Schultz averring that his former statements were the result of bribery, were given under threat of persecution for fraud, and that Bright, Chance and West had told him what to say.

Raines later gave another statement to Sam West of the attorney general's office, in which he said Schultz forced him to give the notarized statement. It was apparent that Raines had recanted his prior statements to the various parties, and that his story would change dependant upon which person he would be giving his statement to. However, a considerable amount of the information Raines gave in his first statement was corroborated by other evidence.

Another witness, Mike Owens, also an employee of Danny Schultz, gave a statement to Defendant–Appellee Bright. In his statement Owens said he was told to block the entrance to the car lot off with a school bus the night of the fire. He also reported another employee of Schultz shortly before the fire had painted the windows in the burned building a dark blue.

The fire department had an anonymous informant who said that Schultz, Smith and Wichser were the persons who burned Oak Ridge Motor Company. The identity of the informant was not disclosed, except to the extent it was not Carl Raines.

At one point Mr. and Mrs. Schultz were prosecuted for threatening the witness, Carl Raines, after he had given his first statement.

Bright also obtained a search warrant for a house sold by Schultz to Wichser shortly before the fire. At the house Bright found an expensive desk owned by Schultz with business records in it and new boat furniture which had been removed from the burned building shortly before the fire.

Smith, Wichser and Schultz had all had fire loss claims in the past.

As a result of the investigation, Schultz, Wichser, and Smith were indicted for conspiracy to commit arson with the intent to defraud an insurance company by the Anderson County Grand Jury in March 1982. The indictment was brought by the Attorney General of Anderson County. Luke Bright testified before the grand jury. The only other evidence before the Grand Jury was that offered by the Attorney General.

Smith, Wichser, and Schultz were tried in August 1983. Carpenter, Chance and other Harford investigators were subpoenaed by the District Attorney to testify at the criminal trial. The trial judge directed a judgment of acquittal against Loran Wichser and Plaintiff Eugene Smith; a jury found Danny Schultz not guilty.

Separate suits were then filed by Eugene Smith, Danny Schultz and Loran Wichser for malicious prosecution, outrageous conduct, negligence and negligent investigation and conspiracy against Harford, Archie R. Carpenter, Luke Bright, GAB, J.B. Thompson, and Richard T. Chance & Associates, Inc.

A Motion in Limine was filed by Carpenter to exclude any evidence regarding a statement taken of Carl Raines on February 26, 1982. This was taken under advisement by the trial court. A final decision was made granting the motion at the end of Plaintiffs' proof at trial.

The cases were consolidated and tried together. At the end of Plaintiff's proof all Defendants moved for a directed verdict. The trial court found:

[T]he plaintiffs were required to prove the four elements of the causes of action that they sought to recover on constituting malicious prosecution. And those elements were never in dispute by any of the parties. One of those elements is that the criminal proceedings be brought without probable cause.... The proof in these cases as to the existence of probable cause, in this Court's opinion, is strong, even in light of the plaintiffs' testimony of arrest, of trial, of exoneration, and denial of guilt or even the appearance of guilt. The plaintiffs' proof assuredly shows that abundant facts were at hand and were, in fact, relied upon by the Defendants during the course of their various investigations to provide the reasonable basis for the belief that the plaintiffs were guilty of the crimes they finally were charged with and tried for, and the proof shows that the examination of the available information was conducted in the same, or a similar manner, as men of ordinary pru-

dence would have examined that information.

The court granted the Defendants' motions for a directed verdict and the suits of Plaintiffs against each Defendant were dismissed.

Plaintiff Eugene Smith appealed as to all Defendants except GAB and J.P. Thompson.

He presents two issues for review:

I. Whether the trial court erred in granting the defendants' motion for a directed verdict on all claims for relief at the close of the Plaintiffs' proof.

II. Whether it was an abuse of discretion for the trial court to grant the Defendant's motion in limine and exclude from evidence the sworn statement of Carl Raines, and any testimony relating thereto.

The Appellant in his brief avers he proceeded to trial on three theories for relief: malicious prosecution, outrageous conduct and negligence. Upon reviewing the entire record we find the Plaintiff's issues, which were tried in the trial court, were conspiracy of all Defendants to maliciously prosecute the Plaintiff, malicious prosecution, and outrageous conduct.

■ Although negligent investigation was alleged in the Complaint, we find nothing in the trial record relating to negligence and/or negligent investigation as a separate issue in the trial of the case. The Plaintiff can not now raise this issue for the first time on appeal. *Estate of Schultz v. Munford, Inc.*, 650 S.W.2d 37 (Tenn.App. 1982).

In passing on a motion for a directed verdict the trial court and this court must

> [T]ake the strongest legitimate view of the evidence in favor of the petitioner, allow all reasonable inferences in his favor, discard all countervailing evidence and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should be directed only where a reasonable mind could draw but one conclusion.

*Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn.1980).

There are four elements necessary for a successful claim of malicious prosecution:

> [I]t is necessary for the plaintiff to establish that a criminal proceeding has been instituted by the defendants against the plaintiff, that such proceeding terminated in favor of the accused, that there was an absence of probable cause, and that there was malice or a primary purpose other than that of bringing the offender to justice. *Landers v. Kroger Co.*, 539 S.W.2d 130 (Tenn.App.1976). A showing of a lack of probable cause will give rise to a rebuttable presumption of malice. *Kerney v. Aetna Casualty and Surety Co.*, 648 S.W.2d 247 (Tenn.App.1982). A showing of malice, however, raises no presumption of lack of probable cause. *Cohen v. Cook*, 62 Tenn.App. 292, 462 S.W.2d 502 (1969).

*Sullivan v. Young*, 678 S.W.2d 906, 911 (Tenn.App.1984).

The Appellant in his brief contends he meets all the criteria called for in *Sullivan*. He alleges the primary purpose of the proceedings was either malice or Harford not being required to pay the insurance claim. He also alleges the only link between him and the fire that would be sufficient for a finding of probable cause is the statement of Carl Raines. He alleges that statement was coerced and made involuntary by threats of criminal prosecution by Bright and West and it was purchased testimony by Harford and its agents.

"Probable cause" has been defined by our Tennessee courts as "the existence of such facts and circumstances as would excite in a reasonable mind the belief that the person charged was guilty of the crime for which he was prosecuted." *Poster v. Andrews*, 183 Tenn. 544, 194 S.W.2d 337, 341 (1946). "The conduct of the defendant is to be weighed in view of what appeared to him at the time of instituting the prior proceeding, not in the light of subsequently appearing facts." *Sullivan v. Young*, 678 S.W.2d 906, 912 (Tenn.App.1984). "The burden of proving want of probable cause rests on the plaintiff in an action for malicious prosecution." *Poster*, 194 S.W.2d at 340.

Appellant also contends he has met the burden set forth in *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247 (Tenn.App. 1982). The *Kerney* court, citing with approval from *Cohen v. Cook*, 62 Tenn.App. 292, 462 S.W.2d 502 (1969), said:

Defendants correctly insist, on the authority of the foregoing cases, that the burden of proof is upon the plaintiff to show lack of probable cause by a preponderance of all the evidence. Where, however, arrest, trial, and exoneration are shown, and the plaintiff testifies of his own innocence of guilt or the appearance of guilt, the burden of proceeding shifts to the defendant, requiring him to produce for evaluation all of the facts and circumstances which he claims as justification for the prosecution.

*Kerney*, at 251, 252.

█ *Kerney* can be distinguished from the case at bar in that in *Kerney* no suspicions were raised against the plaintiff until the investigator for the insurance company began his investigations. In the case at bar the Oak Ridge Fire Department had another informant who alleged Smith, Schultz and Wichser burned the building. There was also evidence obtained from sources other than Raines which confirmed Raines statement. Raines did not testify before the grand jury. His testimony was only used to obtain other evidence from other sources. We concur with the trial court in its findings. The evidence strongly supports probable cause.

█ Another compelling reason for affirming the trial court is the failure of the proof to show that the Defendants were the prosecutors of the case. It was the Attorney General of Anderson County who drew the indictments and prosecuted the case. The Defendants only responded to subpoenas issued by the Attorney General.

Also T.C.A. § 68–17–115 provides certain requirements with which an insurance company must comply in suspected arson cases. It provides the insurance company must furnish "to the state fire marshal and to such other authorized agency as it has reason to believe appropriate ... the date and location of the fire, and any other facts and circumstances then known to the company which tend to establish the cause or origin of the fire." T.C.A. § 68–17–115(a). Under T.C.A. § 68–17–115(b) the insurance company is to release to any authorized agency "any relevant information or evidence deemed important to the authorized agency which the company may have in its possession, relating to the fire itself." Relevant information is defined as:

(1) Pertinent insurance policy information relevant to any fire loss under investigation and any application for such policy;

(2) Policy premium payment records which are available;

(3) History of previous claims made by the insured for fire loss; and

(4) Material relating to the investigation of the loss, including statements of any person, proof of loss, and any other evidence relevant to the investigation.

Section (c) declares in "the absence of malice or negligence ... no insurance company or person who furnishes information on behalf of either, shall be liable for damages in a civil action or subject to criminal prosecution for any oral or written statement made or any other action taken to supply information pursuant to this section."

Section (f)(3) defines "relevant" as meaning "information which proves, or has a tendency to prove or disprove, the existence or nonexistence of any fact that is of consequence to the investigation."

T.C.A. § 68–17–101 *et seq* also gives the fire marshal, his deputies, and assistants the power to summon witnesses and to compel them to attend before them and to testify under oath in relation to any matter. They also have the power to administer oaths and affirmations to any person appearing as a witness before them, and false swearing in any matter aforesaid shall be deemed perjury, and shall be punishable as such. See T.C.A. § 68–17–128.

T.C.A. § 68–17–129 also gives the following power:

If, after examination of witnesses or any investigation, the commissioner, or

any of his deputies or assistants is of the opinion that the facts in relation to such fire indicate that a crime has been committed, he shall present the testimony taken on such examination, together with any other data in his possession to the district attorney general of the county wherein such crime has been committed, and it shall be the duty of the latter to call especially to the attention of the grand jury such testimony, and in case the facts warrant an indictment, no prosecutor shall be required.

T.C.A. § 68–17–134 places in contempt of court the acts of witnesses who refuse to obey a summons, or to testify in relation to any investigation, or to fail to produce documents. The acts of the Defendants relating to Plaintiff's prosecution were in compliance with the statutes.

■ The Appellant also insists the trial court was in error in dismissing his claim of outrageous conduct. *Medlin v. Allied Investment Company*, 217 Tenn. 469, 398 S.W.2d 270 (1966) defined the factors which would give rise to an action for outrageous conduct. "[T]he two factors which must concur in order to outweigh the policy against allowing an action for the infliction of mental disturbance: (a) the conduct complained of must have been outrageous, not tolerated in civilized society, and (b) as a result of the outrageous conduct, there must be serious mental injury." *Id.*, 398 S.W.2d at 274. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Id.*, 398 S.W.2d at 275. There is nothing in the record which would support Appellant's action for outrageous conduct.

■ The Appellant avers it was an abuse of discretion for the trial court to grant the Defendant's motion in limine and exclude from evidence the sworn statement of Carl Raines. We cannot agree.

The statement related only to an inventory of parts in the buildings destroyed by fire and were completely irrelevant to the issues on trial and the statement was never used for any purpose.

In the case of *Austin v. City of Memphis*, 684 S.W.2d 624, 634 (Tenn.App.1984), the court said, "The admissibility or exclusion of evidence rests within the sound discretion of the trial court which should be reversed only for abuse of that discretion. *Pack v. Boyer*, 59 Tenn.App. 141, 149–150, 438 S.W.2d 754, 758 (1968)."

The judgment of the trial court is affirmed and the costs of this appeal are taxed to the Appellant.

FRANKS, J., and WILLIAM H. INMAN, Special Judge, concur.