956 F.2d 1164
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roger GARDNER and Barbara Gardner, Plaintiffs-Appellants,
v.
James E. "Jack" BISCEGLIA, Shirley Bisceglia, and Harold
Gilreath, Defendants-Appellees.
 No. 91-5751.
 United States Court of Appeals, Sixth Circuit.
 March 11, 1992.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Roger and Barbara Gardner appeal the district court's dismissal of their suit. They claim that the defendants conspired to have them falsely arrested and imprisoned, and maliciously prosecuted them by charging them with fraudulently disposing of collateral to a security agreement. We find no merit in their appeal and affirm the district court's decision to dismiss.
 
 
 2
 * In 1984, James E. "Jack" Bisceglia bought the Pittsburgh Paint Store in Kingsport, Tennessee and the Acme Paint Store in Bristol, Tennessee. Soon afterward, Mr. Gardner began working as manager of these stores. Mr. Bisceglia later offered to sell the Bristol store to Mr. Gardner and his wife. The Gardners paid no money down, but granted Mr. Bisceglia a note and security agreement on the store's assets. Under a similar arrangement, Mr. Gardner also agreed to take over the Kingsport store.
 
 
 3
 In April 1987, according to Mr. Gardner, Mr. Bisceglia met him at the Kingsport store and told him that he wanted to buy the stores back. Mr. Bisceglia had also brought a possible buyer for the wallpaper and fixtures from the Bristol store. A complicated exchange of checks among Mr. Bisceglia, the prospective buyer, and Mr. Gardner ensued; Mr. Gardner believed that these transactions ended his debt to Mr. Bisceglia for the Bristol and Kingsport store. Mr. Gardner contacted an attorney with regard to these transactions; the attorney advised him to obtain a receipt from Mr. Bisceglia acknowledging payment in full of his debts. On April 29, 1987, Mr. Bisceglia provided him with such a receipt, stating that "[a]s of this date my loan is paid in full for Bristol and Kingsport stores."
 
 
 4
 Mr. Bisceglia says that by these transactions he repossessed the collateral of the stores in accordance with the authority granted by the security agreements. He also contends that he learned in May 1987 that Mr. Gardner had concealed and disposed of a large amount of inventory and equipment shortly before it was repossessed. Soon afterward, he reported the Gardners to the Kingsport Police Department. The case was assigned to Harold Gilreath, a Kingsport Police criminal investigator. Mr. Gilreath states that he had not spoken to Mr. Bisceglia until he was assigned the case. On May 26, 1987, Mr. Gilreath took a sworn statement from Mr. Bisceglia, who explained the transactions discussed above and stated that in April 1987 the stores had contained inventory of $68,000, even though Mr. Gardner owed approximately $225,000 on the notes. A few days later, Mr. Bisceglia gave Mr. Gilreath copies of various notes and papers involving the two stores.
 
 
 5
 Mr. Gilreath also interviewed several people who testified that the Gardners had taken merchandise and other inventory from the stores for their own benefit. To determine the value of the remaining inventory, he went to the building where Mr. Bisceglia said he had stored all of the inventory he had removed from the stores. He reported his investigation to Greeley Wells, the local Assistant District Attorney. Mr. Wells advised Mr. Gilreath that probable cause existed to bring charges against the Gardners for fraudulent breach of trust or for disposition of collateral subject to a security interest.
 
 
 6
 On June 22, 1987, Mr. Gilreath made an affidavit of complaint against the Gardners before General Sessions Judge Duane Snodgrass. After reading the complaint, Judge Snodgrass authorized the issuance of an arrest warrant for the Gardners on the charge of fraudulent breach of trust by disposition of collateral under a security agreement. On July 7, 1987, Mr. Gilreath arrested the Gardners in the presence of a number of witnesses. The Gardners were in custody for approximately two hours and were released on bond the same day. Judge Snodgrass presided over a preliminary hearing on the charges on September 8, 1987; the Gardners were represented by counsel at the hearing. The only persons to testify at the hearing were Mr. Bisceglia and two other witnesses Mr. Gilreath had interviewed. Judge Snodgrass determined that there was probable cause to believe that the Gardners were guilty and bound them over to the Sullivan County Grand Jury. On February 26, 1988, the grand jury indicted the Gardners; however, the indictment mistakenly named Mr. Bisceglia as the holder of the security interests, when they actually belonged to his wife. To cure its mistake, the grand jury issued presentments repeating the charge against the Gardners on September 6, 1988. When the Gardners were tried in the Sullivan County Criminal Court, their motion for acquittal was overruled by the trial judge. However, after a brief discussion, the jury found the Gardners not guilty.
 
 
 7
 On September 10, 1990, the Gardners filed a complaint in federal district court charging the Bisceglias and Mr. Gilreath with violations of 42 U.S.C. §§ 1981, 1983, and 1985. The Gardners claimed that the defendants had falsely arrested and imprisoned them, libeled and slandered them, and maliciously prosecuted them. The defendants filed motions to dismiss or for summary judgment, and on May 6, 1991, the district court granted these motions and dismissed the case in its entirety. Four days later, the Gardners moved for permission to file certain evidence in opposition to the defendants' motions. The district court granted this motion, treating it as being filed in support of a motion to alter and amend the judgment under Fed.R.Civ.P. 59. However, it also concluded that the Gardners failed to state a federal claim, and dismissed the case in full. The Gardners appeal to this court.
 
 II
 
 8
 The Gardners argue that the defendants in this case violated 42 U.S.C. §§ 1981, 1983 and 1985. For their § 1985 claim, the Gardners rely largely upon Griffin v. Breckenridge, 403 U.S. 88 (1971). In Griffin, the Supreme Court held that § 1985(3) covered private conspiracies. However, the Griffin Court also ruled that "[t]he language [in § 1985(3) ] requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102 (emphasis in original).
 
 
 9
 As for their § 1981 claim, the Gardners argue that the decision of the Bisceglias and Mr. Gilreath to prosecute them, even though they had been released from their debt to the Bisceglias, could only result from the type of animus that the civil rights statutes were designed to thwart. They argue that they could never have been convicted of fraudulent breach of trust because Mr. Bisceglia had discharged them of their debt. At their trial, the court charged the jury as follows:
 
 
 10
 ... It is the law of this state that there is no criminal offense if the amount owed is paid or settled before trial regardless of whether or not the accused disposed of or concealed collateral before that time. Such settlement or payment would relieve the accused of criminal responsibility whether or not the creditor at a later time attempted to revoke such settlement.
 
 
 11
 They reason that the Bisceglias and Mr. Gilreath must have acted from bad faith to pursue them in the face of such clear law. Furthermore, the Gardners contend that their arrest was deliberately staged so that as many people as possible could see their embarrassment. They also urge this court to remember the broad purposes of the civil rights laws.
 
 
 12
 Next, the Gardners attempt to demonstrate that they have a claim under § 1983. According to Fitzke v. Shappell, 468 F.2d 1072 (6th Cir.1972):
 
 
 13
 Two elements are necessary for recovery under the terms of § 1983. "First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States;" and second, he must show that the defendant deprived him of that right "under color of law."
 
 
 14
 468 F.2d at 1075 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). The Gardners claim that they have outlined sufficient facts to avoid summary judgment under this standard, since they claim that neither the Bisceglias nor Mr. Gilreath had a good-faith belief that the Gardners should have been arrested. Moreover, they deny that Mr. Gilreath can hide behind what Mr. Bisceglia--his alleged co-conspirator--presented as fact. The Gardners also argue that they have a legitimate claim for false imprisonment, which can also be rectified under the civil rights laws.
 
 
 15
 The Gardners' appeal has no merit, and we reject it in full. We first note that they do not mention their earlier claims for libel or slander; these claims have apparently been abandoned. Moreover, the Gardners have no claim under 42 U.S.C. § 1981 because there is no evidence that they were discriminated against because of their ancestry or ethnic characteristics. Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987); see also Associated Gen. Contractors of Cal. v. City and County of San Francisco, 813 F.2d 922, 928 n. 11 (9th Cir.1987). As for § 1985(3), even the cases cited by the Gardners, such as Griffin v. Breckenridge, 403 U.S. 88 (1971), hold that § 1985 plaintiffs must demonstrate that they suffered from class-based animus. All parties to this case are white American citizens and the Gardners have presented no evidence that the Gardners were penalized for being a member of any class.
 
 
 16
 Next, we reject the Gardners' claims for false imprisonment and false arrest. Under Tenn.Code Ann. § 28-3-104(a)(1), actions for false imprisonment must be commenced within one year after the cause of action accrued. The general rule is that the statute of limitations for false imprisonment begins to run when the plaintiff's detention ends, not at the end of legal proceedings resulting from the arrest. See O'Fallon v. Pollard, 427 N.W.2d 809, 812 (N.D.1988); Pisano v. City of Union City, 198 N.J.Super. 588, 592, 487 A.2d 1296, 1298 (1984). The Gardners were arrested on July 7, 1987 and were released from custody the same day. Because they did not file this complaint until 1990, their false imprisonment claim is time-barred. As for the Gardners' false arrest claim, it fails because they were clearly arrested under a valid warrant. Therefore, their arrest was "pursuant to lawful authority, and the action here is not one for false arrest." Sullivan v. Young, 678 S.W.2d 906, 910 (Tenn.Ct.App.1984).
 
 
 17
 Finally, we turn to the Gardners' claims for malicious prosecution and violation of their civil rights under § 1983. Mrs. Bisceglia is exempt from these claims, since she merely held the security agreements, and had no contact with the Gardners or Mr. Gilreath. As for Mr. Bisceglia, he is a private party and can be found liable under § 1983 only if he
 
 
 18
 engaged in a conspiracy with one or more parties acting under the color of state law.... In order to establish a conspiracy, the plaintiff must demonstrate that the state officials and the private party somehow reached an understanding to deny the plaintiffs their constitutional rights.
 
 
 19
 Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1352 (7th Cir.1985). Mere allegations of a conspiracy cannot withstand a motion to dismiss. Ibid. Even providing false information to an arresting officer is not, by itself, sufficient to state a claim against a private party under § 1983. Ibid. In this case, the district court held that there was "no evidence of conspiracy between the Bisceglias and Mr. Gilreath." Before this court, the Gardners have once more failed to present any evidence of a conspiracy, and rely merely on conclusory assertions that the defendants worked against them. These assertions are clearly insufficient to sustain a § 1983 claim.
 
 
 20
 As for Mr. Gilreath, he is protected from a § 1983 suit by qualified immunity, which the Supreme Court has described as follows:
 
 
 21
 As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law. At common law, in cases where probable cause to arrest was lacking, a complaining witness' immunity turned on the issue of malice, which was a jury question. Under the [ Harlow v. Fitzgerald, 457 U.S. 800 (1982) ] standard, on the other hand, an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner.
 
 
 22
 Malley v. Briggs, 475 U.S. 335, 341 (1986). This case presents overwhelming evidence that Mr. Gilreath acted reasonably. An Assistant District Attorney advised Mr. Gilreath that probable cause existed to charge the Gardners. Judge Snodgrass specifically determined that probable cause existed and issued warrants for their arrest; furthermore, after a preliminary hearing, he had them bound over for trial. Finally, the judge at the Gardners' criminal trial rejected their motion for acquittal and submitted the case to the jury. In order to reject this motion, the trial judge had to conclude that sufficient evidence existed to sustain a conviction. Tenn.R.Crim.P. 29(a). These repeated legal findings amply support Mr. Gilreath's decision to file a complaint against the Gardners.
 
 III
 
 23
 Thus, the Gardners do not present any valid claims under the federal civil rights laws. Even if the Gardners have some state claims, the district court properly dismissed the case in full once it concluded they could not proceed under federal law. "[I]f the federal claims are dismissed before trial ... the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Accordingly, the district court's decision is AFFIRMED.