IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 4, 2024

**INA GRACE JACOBI v. VENDENGINE INC.**

**Appeal from the Circuit Court for Robertson County**
**No. 74CC1-2020-CV-246          Adrienne Gilliam Fry, Judge**

_____

**No. M2023-01459-COA-R3-CV**

_____

Ina Grace Jacobi sued VendEngine, Inc. ("VendEngine"), alleging that she was wrongfully arrested due to VendEngine's negligent design and operation of an inmate messaging system. The trial court determined that the gravamen of Ms. Jacobi's claim was for malicious prosecution and granted summary judgment to VendEngine after concluding she failed to prove the elements of that claim. Ms. Jacobi appealed. Discerning no error, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which CARMA DENNIS MCGEE and KRISTI M. DAVIS, JJ., joined.

Thomas Blaine Dixon, Clarksville, Tennessee, for the appellant, Ina Grace Jacobi.

Olivia Park and Jack Paul Brewer, Brentwood, Tennessee, for the appellee, VendEngine, Inc.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

This appeal arose from two wrongful arrests in August 2019. VendEngine is the vendor of an inmate electronic communication software for the Robertson County Adult Detention Center ("the Detention Center"). This software allows inmates to send and receive messages from people outside of the prison. Any person outside of the Detention Center may use VendEngine's website to send an inmate a message by simply entering the sender's name in the field designated "From" and then entering the sender's email or phone number. The site does not require a login to access, and it does not use any form of

authentication to verify that the phone number or email belongs to the person identified in the "From" field. Therefore, it is possible for a person to send a message to an inmate that appears to be from someone else if the sender knows the other person's name and email or phone number.

When a message is sent to an inmate from an unincarcerated person, VendEngine transmits that message and the sender's information to the Detention Center's administrators and corrections officers, who then assist in monitoring the communications. On August 21 and 22, 2019, someone purporting to be Ms. Jacobi used VendEngine's messaging system to send threatening messages to an inmate at the Detention Center. After screening these messages that identified Ms. Jacobi as the sender, the Detention Center's personnel initiated criminal proceedings against her for a charge of assault. Police arrested Ms. Jacobi, and she was released on bond on August 22, 2019, with the condition that she not send any more threatening messages to the inmate. Later that day, however, the inmate received another threatening message from someone purporting to be Ms. Jacobi. The Detention Center's personnel again initiated criminal proceedings against Ms. Jacobi based on the messages and sender information provided by VendEngine, resulting in her being arrested a second time—this time for violating her bond conditions. The charges against Ms. Jacobi were eventually dismissed.

On August 21, 2020, Ms. Jacobi filed a complaint against VendEngine claiming that the company was liable to her "for both negligent infliction of emotional distress and/or reckless infliction of emotional distress." In support of her claim, Ms. Jacobi alleged that VendEngine was "negligent and reckless" in the "design, maintenance, operation, deployment, supervision, and training" relative to its messaging system. She further alleged that, based on these "negligent and reckless" actions, she suffered emotional damages when she was wrongfully arrested because a prosecutor used the false or misleading information supplied by VendEngine to charge her with assault and violation of her bond conditions.

VendEngine filed a motion for summary judgment arguing that the case should be dismissed because the gravamen of Ms. Jacobi's complaint was a claim for malicious prosecution and that she could not prove any of the elements of that claim. After hearing arguments on the motion, the trial court entered an order on July 18, 2023, granting summary judgment "as to [Ms. Jacobi's] cause of action for malicious prosecution." The court further stated that "[t]he remainder of [Ms. Jacobi's] causes of action shall remain viable, unless or until further action is taken." On August 15, 2023, VendEngine filed a motion to "reconsider, clarify, alter or amend" the order granting summary judgment. In the motion, VendEngine requested that the court uphold the dismissal of Ms. Jacobi's malicious prosecution claim and dismiss the case in its entirety because she had no other viable causes of action. The court granted the motion, finding that "the gravamen of [Ms. Jacobi's] complaint is solely for malicious prosecution" and that she could not satisfy the elements of that claim. Thus, the court concluded that the case should be dismissed in its entirety because no other viable causes of action remained.

Ms. Jacobi appealed and presents several issues for our review that we consolidate and restate as follows: (1) whether the trial court erred in considering the gravamen of the complaint in the context of VendEngine's motion for summary judgment, (2) whether the trial court erred in determining that the gravamen of the complaint was a claim for malicious prosecution, and (3) whether the trial court erred in granting summary judgment.

STANDARD OF REVIEW

Deciding a motion for summary judgment is a matter of law, so we review a trial court's ruling de novo without a presumption of correctness. *Bakker v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. E2022-00872-COA-R3-CV, 2024 WL 940243, at *3 (Tenn. Ct. App. Mar. 5, 2024). Therefore, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).

When the party moving for summary judgment does not bear the burden of proof at trial, it must meet its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party meets its burden of production, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). "Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that 'set forth specific facts showing that there is a genuine issue for trial.'" *Edward Jones Tr. Co. v. Woods*, No. M2023-00172-COA-R3-CV, 2024 WL 2795844, at *3 (Tenn. Ct. App. May 31, 2024) (quoting TENN. R. CIV. P. 56.06). If the nonmoving party does not do so, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. However, if the moving party fails to show that summary judgment is appropriate, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. Ct. App. 2008) (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

ANALYSIS

I.  Gravamen of the complaint principle

Ms. Jacobi asserts that the trial court erred in considering the gravamen of the complaint. The "'gravamen of the complaint' is a 'rather elliptical phrase' which 'refers to the substantial point, the real purpose, or the object' of an action." *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 148 (Tenn. 2015) (quoting *Redwing v. Cath. Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012)). According to Ms. Jacobi, the concept of the gravamen of the complaint applies only to cases involving statutes of limitations, governmental immunity, subject matter jurisdiction, and libel/slander, none of which are at issue in this case.

To support her argument, Ms. Jacobi cites to four cases: *Benz-Elliott*, 456 S.W.3d at 152 (applying gravamen of the complaint to determine the applicable statute of limitations); *Betty H. v. Williamson Cnty.*, No. M2022-00300-COA-R3-CV, 2023 WL 5193537, at *4-5 (Tenn. Ct. App. Aug. 14, 2023) (applying gravamen of the complaint to a plaintiff's claim to determine whether a county retained governmental immunity); *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006) (stating that, "when a court's subject matter jurisdiction is questioned, it must first ascertain the nature or gravamen of the case"); *Piper v. Mize*, No. M2002-00626-COA-R3-CV, 2003 WL 21338696, at *7 (Tenn. Ct. App. June 10, 2003) (stating that "the gravamen of the action" distinguishes a civil action for libel from a criminal action for libel). We have thoroughly reviewed each of these cases and have found nothing stating, expressly or impliedly, that application of the "gravamen of the complaint" principle is limited to those four types of cases. Indeed, in further researching the matter, this Court found no Tennessee case stating such. Rather, we found caselaw applying the "gravamen of the complaint" principle in a situation—like the one here—where the court needed to determine the actual cause of action sought by a plaintiff to know what body of law governed the case.

In *Johnsey v. Northbrooke Manor, Inc.*, No. W2008-01118-COA-R3-CV, 2009 WL 1349202, at *1 (Tenn. Ct. App. May 14, 2009), Mr. and Mrs. Johnsey sued a nursing home after Mr. Johnsey allegedly broke his hip while a resident at the nursing home. The Johnseys asserted in their complaint that the nursing home "negligently cared for Mr. Johnsey and caused or allowed him to fall and suffer a broken hip." *Id.* None of the situations identified by Ms. Jacobi were at issue. Rather, the determinative issue concerned whether the claim asserted in the complaint was for ordinary negligence or medical malpractice because, though both types of claims involve negligence, the elements a plaintiff must prove to establish the two claims differ. *Id.* at *5-6. The trial court granted summary judgment to the nursing home after concluding that the asserted claim was for medical malpractice and that no competent proof of the statutory elements for that claim had been offered. *Id.* at *6. On appeal, this Court stated that, to determine which claim was being asserted, it needed to look to the gravamen of the complaint: "when the gravamen

of the complaint is not negligence in furnishing medical treatment to a patient, but the defendant's failure in fulfilling a different duty, the claim sounds in ordinary negligence." *Id.* at \*10 (citing *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 640-41 (Tenn. 2003)). Because the gravamen of the plaintiff's claim sounded in medical malpractice, this Court agreed with the trial court in that regard. *Id.* at \*14.

Based on the foregoing, we conclude that the trial court did not err in applying the gravamen of the complaint principle under the circumstances of this case.

## II. Malicious prosecution

Ms. Jacobi next contends that the trial court erred in determining that the gravamen of her complaint was a claim for malicious prosecution. The analysis followed by courts when ascertaining the gravamen of a claim "is not dependent upon the 'designation' or 'form' litigants ascribe to an action." *Benz-Elliott*, 456 S.W.3d at 148 (quoting *Redwing*, 363 S.W.3d at 457). Instead, "a court must first consider the legal basis of the claim and then consider the type of injuries for which damages are sought." *Id.* at 151. In other words, courts first look to the cause of the damages, *Resol. Tr. Corp. v. Wood*, 870 F. Supp. 797, 807 (W.D. Tenn. 1994), *cited with approval in Benz-Elliott*, 456 S.W.3d at 150, and then they look at the type of damages. *Benz-Elliott*, 456 S.W.3d at 151.

Here, Ms. Jacobi claimed that VendEngine's "negligent and reckless" design and operation of its messaging system (including failure to train and failure to warn) provided the police with misleading information that resulted in her wrongful arrests and the mental injury she suffered from those arrests. To establish a claim for negligence, a plaintiff must prove five elements: "1) a duty of care owed by the defendant to the plaintiff; 2) conduct falling below the applicable standard of care amounting to a breach of that duty; 3) an injury or loss; 4) causation in fact; and 5) proximate, or legal, cause." *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013). Whether a defendant owed a duty of care to a plaintiff is a threshold matter, and it presents a question of law. *See Burroughs v. Magee*, 118 S.W.3d 323, 327 (Tenn. 2003).

Ms. Jacobi contends that VendEngine owed a duty of reasonable care "to people whose numbers are inserted by users over the [messaging system] as being the senders of messages to have adequate security, verification and authentication measures" and "to train and/or warn[] the operators of [the messaging system] (law enforcement) of the vulnerability of the system and of the inherently unreliable nature of the data transmitted." Essentially, she argues that VendEngine owed a duty "to people whose numbers are inserted by users" of the messaging system to design a better messaging system and to ensure that it was operated in a way that limited the possibility for misidentification of a perpetrator of a crime—making her claim one for negligent identification of a suspect.

Ms. Jacobi cites to no Tennessee cases where a court found that a cause of action for negligent identification of a suspect exists, and this Court is aware of no Tennessee case considering the matter. We are persuaded, however, by cases from other jurisdictions declining to recognize a cause of action for negligent identification of a suspect. *See Walgreens v. McKenzie*, 676 S.W.3d 170, 179-80 (Tex. App. 2023); *Foley v. Univ. of Dayton*, 81 N.E.3d 398, 402 (Ohio 2016); *Jaindl v. Mohr*, 637 A.2d 1353, 1356 (Pa. Super. Ct. 1994).[1] The rationale behind rejecting such a claim stems from recognition of an important public policy consideration:

> "that the potential of civil liability for the provision of mistaken information to law enforcement agents would have a chilling effect on citizen cooperation and the provision of valuable information by citizens to police. Further, we are in agreement that the public interest in investigation of a crime outweighs the recognition of a negligence action for negligent identification of a suspect."

*Jaindl*, 637 A.2d at 1356 (quoting *Davis v. Equibank*, 603 A.2d 637, 641 (Pa. Super. Ct. 1992)); *see also Walgreens*, 676 S.W.3d at 180 (concluding that "[t]o allow a negligence claim" would discourage the reporting of crimes); *Foley*, 81 N.E.3d at 401 (stating that "[t]he tort of negligent misidentification would have a chilling effect" on the public policy consideration encouraging citizens to report crimes and to come forward to assist police investigating those crimes).

This does not mean that public policy prohibits the right of civil redress. Tennessee recognizes the tort of malicious prosecution, which the Tennessee Supreme Court has described as follows:

> Malicious prosecution is a common law tort claim that allows a person who was a defendant in one case to sue an individual involved in the earlier proceeding for knowingly and maliciously pursuing the defendant for a false act or crime. 5 Tenn. Prac. Civ. Proc. Forms § 8:211 (3d ed. 2001). In the United States Supreme Court case *Albright v. Oliver*, Justice Kennedy wrote in his concurrence that "a malicious prosecution, like a defamatory statement, can cause unjustified torment and anguish—both by tarnishing one's name and by costing the accused money in legal fees and the like." 510 U.S. 266, 283, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Kennedy, J., concurring) (citations omitted). The tort of malicious prosecution seeks to redress misuse of the legal process, but courts have also observed that

---

[1] The Tennessee Supreme Court recently held that "[t]he recognition of a tort is not something to done lightly," particularly "where no real precedent exists . . . [and] when established causes of action already apply to the factual scenario." *Case v. Wilmington Trust, N.A.*, ---S.W.3d----, No. E2021-00378-SC-R11-CV, 2024 WL 4774863, at *14 (Tenn. Nov. 14, 2024).

"[a]ctions for malicious prosecution . . . ought not to be favored but managed with great caution." *Roblyer v. Hoyt*, 343 Mich. 431, 72 N.W.2d 126, 128 (1955) (quoting *Van Sant v. Am. Express Co.*, 158 F.2d 924, 931 (3d Cir. 1946)). The possibility of a malicious prosecution action has the "tendency to deter our public officials from the proper performance of their duties to the detriment of the safety and welfare of the community." *Id.* The possibility may also tend to "reduce the public's willingness to resort to the court system for settlement of disputes." *Himmelfarb*, 380 S.W.3d at 41.

*Mynatt v. Nat'l Treasury Emps. Union, Ch. 39*, 669 S.W.3d 741, 746 (Tenn. 2023).

A claim for malicious prosecution requires a plaintiff to "'establish that a criminal proceeding has been instituted by the defendants against the plaintiff, that such proceeding terminated in favor of the [plaintiff], that there was an absence of probable cause, and that there was malice or a primary purpose other than that of bringing the offender to justice.'" *Gordon v. Tractor Supply Co.*, No. M2015-01049-COA-R3-CV, 2016 WL 3349024, at *5 (Tenn. Ct. App. June 8, 2016) (quoting *Smith v. Harford Mut. Ins. Co.*, 751 S.W.2d 140, 143 (Tenn. Ct. App. 1987)). Malicious prosecution claims are often asserted against public officials because that is who institutes criminal proceedings against an individual but, in specific circumstances, a private person can be held liable for instituting criminal proceedings:

"A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving such information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. *Where a private person gives to a prosecuting officer information which he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief therein was one which a reasonable man would not entertain.* The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

*If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible and a prosecution based thereon is procured by the person giving the false information.* In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his

- 7 -

desire to have the proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to commence the prosecution *or that the information furnished by him upon which the official acted was known to be false*."

*Id.* at *6 (quoting RESTATEMENT (FIRST) OF TORTS § 653 cmt. g (emphasis added)).

Here, Ms. Jacobi claims that VendEngine's messaging system provided the police information that misidentified her as the sender of the threatening messages at issue and that, based on that information, police arrested her twice without probable cause. Malicious prosecution provides the legal basis for such a claim. Furthermore, the damages for which she sought recovery were for emotional damages she suffered from the two wrongful arrests. These damages flowed from the malicious prosecution claim.

Given the basis of the legal claim and the type of damages sustained, we agree with the trial court's determination that the gravamen of Ms. Jacobi's claim was malicious prosecution.

### III.     Whether summary judgment was appropriate

Finally, Ms. Jacobi contends that the trial court erred in granting VendEngine's motion for summary judgment because the court did not comply with the requirements of Tenn. R. Civ. P. 56 when it "completely failed to engage in any determination of the undisputed or disputed facts." Tennessee Rule of Civil Procedure 56.04 states that "[t]he trial court shall state the legal grounds upon which the court denies or grants the motion [for summary judgment], which shall be included in the order reflecting the court's ruling." The Tennessee Supreme Court has emphasized the importance of this rule, stating that the trial court's summary judgment ruling must be "adequately explained and [] the product of the trial court's independent judgment," and "judges must arrive at their decisions by applying the relevant law to the facts of the case." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 312, 314 (Tenn. 2014). A review of the order granting summary judgment shows that Ms. Jacobi is correct that Rule 56.04 was not satisfied. The order consists of merely two paragraphs that provide little to no factual findings or conclusions of law. The court simply stated that it granted "summary judgment for the limited cause of action requested, malicious prosecution." In the order granting VendEngine's motion to reconsider, clarify, alter, or amend, the trial court made a better effort to comply with Rule 56.04 by making some factual findings and conclusions of law, but the order still fell short of the rule's requirements.

Although the trial court should have made more detailed findings, the insufficiencies are not fatal in this case. The Tennessee Supreme Court has supported the Court of Appeals's practice of not remanding the case in certain instances "when the basis for the trial court's decision can be readily gleaned from the record" and "when the absence

of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision." *Id.* at 314. When deciding whether the absence of stated grounds in the trial court's order will not "significantly hamper the review of the trial court's decision," *id.*, we consider if there is a potentially viable substantive argument to address. *See Com. Painting Co., Inc. v. Weitz Co. LLC*, No. W2019-02089-COA-R3-CV, 2024 WL 4360219, at *13 (Tenn. Ct. App. Oct. 1, 2024) (stating that vacating the case was unwarranted when there was "no substantive argument to even potentially soldier on to address in this case").

Here, in the order granting the motion to reconsider, clarify, alter, or amend, the trial court expressly found that the gravamen of Ms. Jacobi's complaint was "solely for malicious prosecution" and, after listing the elements for malicious prosecution, the court found that Ms. Jacobi "readily admitted" at the summary judgment hearing that the elements were not satisfied. We, therefore, are not left guessing as to the court's basis for granting summary judgment. Lastly, there is no substantive argument to soldier on to address in this case. Ms. Jacobi failed to develop any substantive attack against the trial court's finding that her complaint was "solely for malicious prosecution" and that she did not satisfy the elements of that claim. She merely reiterates at length that her claim is one for negligence and points to the sixty-seven facts enumerated in her statement of facts filed in opposition to the motion for summary judgment. As discussed above, her damages arose from a claim for malicious prosecution. Thus, "the absence of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision," and vacating the order is not warranted. *See Smith*, 439 S.W.3d at 314.

Having determined that vacating the order is not warranted, we move on to consider whether the trial court erred in concluding that summary judgment was appropriate. A review of the undisputed facts shows that Ms. Jacobi could not establish the first element of a malicious prosecution claim against VendEngine—that VendEngine started or caused Robertson County to initiate criminal proceedings against her. In particular, even if VendEngine provided information that resulted in Ms. Jacobi's arrest, the mere provision of information is insufficient to render VendEngine liable for malicious prosecution. Ms. Jacobi provided no evidence that VendEngine knew the information provided was false. The decision to arrest Ms. Jacobi, therefore, remained entirely within the discretion of Robertson County. The undisputed facts also show that Ms. Jacobi cannot establish the second element—that VendEngine acted with malice to orchestrate her arrest.

In light of the foregoing, we conclude that the trial court properly granted summary judgment to VendEngine.

CONCLUSION

We affirm the trial court's ruling. Costs of this appeal are assessed against the appellant, Ina Grace Jacobi, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE